# Exhibit A

State of New York - Department of State
Division of Corporations

Party Served:                                    Plaintiff/Petitioner:
 DELOITTE CONSULTING LLP                            SHUKLA, ASHU


 DELOITTE CONSULTING LLP
 30 ROCKEFELLER PLAZA
 NEW YORK,  NY 10112


 Dear Sir/Madam:
 Enclosed herewith is a legal document which was served upon the Secretary of
 State on 02/05/2019 pursuant to SECTION 303 OF THE LIMITED LIABILITY COMPANY
 LAW.  This copy is being transmitted pursuant to such statute to the address
 provided for such purpose.


                                              Very truly yours,
                                         Division of Corporations

FILED: NEW YORK COUNTY CLERK 02/01/2019 01:36 PM          INDEX NO. 151144/2019
NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 02/01/2019

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-------------------------------------------------------------------X

ASHU SHUKLA,                                                Index No.:

                              Plaintiff,      **<u>SUMMONS</u>**

Plaintiff designates New
York County the place of
trial

The basis of the venue is the
Defendant's primary place of
business

          -against-

DELOITTE CONSULTING, LLP,

                      Defendant.
-------------------------------------------------------------------X

    ***YOU ARE HEREBY SUMMONED*** to answer the complaint in this action and to serve a

copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the Plaintiff's attorneys within twenty (20) days after the service of this Summons,

exclusive of the date of service (or within 30 days after the service is complete if this summons is

not personally delivered to you within the State of New York); and in the case of your failure to

appear or answer, judgment will be taken against by default for the relief demanded in this

complaint.

Dated: New York, New York
       January 31, 2019

                              Yours, etc.,

                              VANDAMME LAW FIRM, P.C.
                              */s/ Hendrick Vandamme*
                              Hendrick Vandamme, Esq.
                              46 Trinity Place, 3rd Floor
                              New York, New York 10006
                              Tel: (212) 641-0613/212-851-6916

1

FILED: NEW YORK COUNTY CLERK 02/01/2019 01:36 PM
INDEX NO. 151144/2019
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 02/01/2019

TO:  DELOITTE CONSULTING, LLP
     30 Rockefeller Plaza
     New York, NY 10112

2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-------------------------------------------------------------------X

ASHU SHUKLA,                                              Index No.:

                                                          **COMPLAINT**

                        Plaintiff,

            -against-

DELOITTE CONSULTING, LLP,

                        Defendant.
-------------------------------------------------------------------X

Plaintiff, ASHU SHUKLA (hereinafter "Plaintiff"), by his attorneys, Vandamme Law

Firm, P.C., as and for his Verified Complaint against Defendant DELOITTE CONSULTING,

LLP, ("Defendant"), alleges as follows:

### JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction of the claims that arise under New York laws.

2.  Venue is proper because at least one of the parties resides in New York County.

3.  Plaintiff ASHU SHUKLA is a resident of New Jersey and a former

    employee of the Defendant.

4.  Upon information and belief, Defendant DELOITTE CONSULTING, LLP, is a

    foreign corporation with its principal place of business located 30 Rockefeller Plaza, New

    York, NY 10112.

5.  This is a civil action seeking monetary relief, compensatory damages, disbursements,

3

INDEX NO. 151144/2019
RECEIVED NYSCEF: 02/01/2019

costs and fees for violations of Plaintiff's rights resulting from wrongful termination, discrimination, harassment, hostile work environment, violation of New York State employment laws, and retaliation.

6.     Specifically, Plaintiff alleges that Defendant negligently, intentionally, wantonly, recklessly, and knowingly sought and did wrongfully deprive him of him employment, position, title, and pay through discrimination, harassment, and retaliation. Plaintiff alleges that Defendant purposefully and intentionally discriminated against him, retaliated against him by creating a hostile work environment, and wrongfully terminated his employment.

7.     Plaintiff alleges that the Defendant created a workplace atmosphere that was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of Plaintiff's employment with Defendant.

8.     The alleged acts against Plaintiff were done knowingly, purposely, and with all intentions of depriving him of his right to be free of discrimination and retaliation within his employment with the defendant.

## PARTIES AND RELEVANT INDIVIDUALS

9.     Plaintiff ASHU SHUKLA is a former employee of Defendant DELOITTE CONSULTING, LLP, ("Defendant").

10.    Defendant provides audit, tax, consulting, enterprise risk and financial advisory services around the world.  Defendant hires employees to provide consulting services to companies around the world.

11.    Defendant employs over 287,000 employees. In 2018, Defendant had total revenues of over $43,000,000,000.00

12.    Defendant is subject to state and federal employment laws of the State of New York.

4

## JURISDICTION

13.  Supreme Court, New York County, has subject matter jurisdiction over this matter since the Defendant maintains a place of business New York County where the Plaintiff was employed.

## FACTS

14.  Plaintiff ASHU SHUKLA is a 34 -year old male of Indian national heritage who suffers from serious allergies which cause anaphylactic reactions and disability when triggered.

15.  Plaintiff was awarded a Bachelor's degree in Electronics and Telecommunication Engineering in 2006 from India, and a Master's degree in Information Systems in 2010 from New York University – Courant School of Mathematics and Stern School of Business. Using this education, Plaintiff has amassed over 10 years of experience in the Technology Consulting Industry.

16.  Approximately 9 years into his consulting career, in October, 2016, Plaintiff was offered a position as Senior Consultant in the Defendant's New York office. After accepting the offer and clearing various background checks, the Plaintiff commenced working in December, 2016.

17.  As employee for Defendant, Plaintiff enjoyed success in managing and delivering several projects where he helped the Defendant and Defendant's clients develop and implement solutions and improvements to their businesses. He was praised for his work both by Defendant's leadership and by Defendant's clients. In 2017, the Plaintiff was also honored with the Deloitte US Consulting Business Solution Award after winning a cross Deloitte Consumer & Industrial Products (C&IP) practice solution competition

5

Honors award on Consumer Product ideation challenge.

18.  In around fall of 2017, the Plaintiff was advised that he would be sent on a project for JP Morgan in London in early 2018 and that he should take steps to obtain a UK visa for that purpose.

19.  On December 14, 2017, Plaintiff attended a Deloitte year-end event where alcohol was served to all attendees. After drinking one-and-half of the alcoholic drinks served to him, the Plaintiff suffered a serious anaphylactic reaction, where he remembers feeling a choking sensation caused by his throat swelling shut and began to lose consciousness. The Plaintiff does not remember the events after that. That night, he vaguely remembered, two Deloitte partners had carried him to a hotel.

20.  The following morning, the Plaintiff reported the events of the prior evening and his condition to one of the Deloitte Partners, Michael Fernandez, who had carried him to a hotel, by both email and phone. Michael first contacted the Plaintiff over email. In the morning, Plaintiff continued to suffer breathing difficulty, experienced itchy throat and observed rashes and hives on his body. Eight months before the event, in New York, the Plaintiff was tested and diagnosed with potentially life-threatening allergies that could result in anaphylaxis, a condition for which the Plaintiff was prescribed an EpiPen. Upon information and belief, the drinks and food served and consumed contained allergens which triggered an allergic reaction in the Plaintiff, rendering him temporarily disabled.

21.  On around December 18, 2017, three days after Plaintiff's anaphylactic reaction, Plaintiff was advised that he would no longer be sent to work on the JP Morgan project in the UK. Although the Plaintiff had already purchased a plane ticket and obtained his visa to travel, the project leader told him that she was getting "pressure from above" not

6

to put him on the project. The project leader also accused the plaintiff of buying an airplane ticket without her approval, when in-fact the air-ticket was a requirement placed by the UK consulate to obtain a visa and the same was discussed with the project leader.

22.    Soon thereafter, it became apparent that the Defendant did not want to assign the Plaintiff to any projects and intentionally sent the Plaintiff to client interviews for which he was destined not to be hired due to lack of relevant experience. For instance, approximately a week after learning that he would not work on the JP Morgan project, the Plaintiff was asked to interview at a client on leading Data Governance training project for 40,000+ employees globally. Since the Plaintiff had no experience in this domain, he was not assigned to the project. Similarly, the Defendant asked the Plaintiff for project that required deep knowledge of health care industry which the Plaintiff did not have. Upon information and belief, Plaintiff was singled out due to his medical condition and treated differently from other employees in this regard. In fact, Plaintiff was treated differently than he had been treated before the Defendant became aware of his medical condition and disability. Never before had he been sent to interview for projects he was not qualified for.

23.    During the course of next several months, various supervisors began harassing the Plaintiff regarding his anaphylactic reaction by mocking him for not being able to drink alcohol, hinting that he would not be getting a bonus due to the Plaintiff's allergic reaction and threatening to send the Plaintiff to purported projects in North Korea and Syria as punishment.

24.    Specifically, Anand Sairam, Sr. Manager, Deloitte Consulting, said "I will send you to North Korea", and "I will send you to Syria". Kartik Nagaraja, Sr. Manager, Deloitte

7

FILED: NEW YORK COUNTY CLERK 02/01/2019 01:36 PM       INDEX NO. 151144/2019

NYSCEF DOC. NO. 1                                      RECEIVED NYSCEF: 02/01/2019

Consulting, and Ajay Sanipani, Manager, Deloitte Consulting, mocked the Plaintiff in front of multiple people for not being able to drink alcohol.

25. Sriram Ramamurthy, Sr. Manager, Deloitte Consulting, called the Plaintiff on the evening of the Bonus day on August 27th 2018, mocked him for not getting any bonus, inquired multiple times about Plaintiff's lack of bonus, and harassed the Plaintiff by suggesting that he would be released from the Ball Corporation project the Plaintiff had been working on. Four (4) days later the Plaintiff was, in fact, released from the project.

26. Due to his serious allergic reaction and temporary disability caused when the allergy is triggered, Plaintiff was singled out and treated differently from similarly situated employees who did not suffer from life-threatening allergies or disabilities. Upon information and belief, similarly situated employees who did not suffer from life-threatening allergies or disabilities did receive bonuses for their work and were not harassed on an ongoing basis by their supervisors.

27. Despite the Plaintiff's allergies, Plaintiff's supervisors forced him to participate in drinking alcohol in at least one other event over Plaintiff's protests and while Plaintiff openly carried an EpiPen for his condition. The Plaintiff showed his rashes after drinking a sip of Wine and texted pictures as evidence to his Deloitte Manager, Manoj Kumar.

28. Early in 2018, although the Plaintiff was not given the opportunity to take on new projects for outside clients, the Plaintiff continued working hard on internal firm initiatives on Cognitive analytics and artificial intelligence. Based on his work, Plaintiff not only won the admiration of his peer colleagues but the Defendant also won a $10+ million-dollar contract with Takeda.

8

Case 1:19-cv-10578   Document 1-1   Filed 11/14/19   Page 11 of 22INDEX NO. 151144/2019

29. In around February, 2018, the Plaintiff took part in firm-wide ethics, integrity and compliance training. Based on the training he received, he reported an observed misbehavior from his previous project leadership to Human Resources (HR). Specifically, Plaintiff reported that, though it was his duty to point out instances where projects were mismanaged and to suggest improvements, when he did so during a Fall 2017 project based in Los Angeles, he was threatened against raising such issues with supervisors in higher positions and learned it would 'obviously result in a bad rating', he faced unprofessional treatment by his supervisor and finally removed from the project by his immediate supervisors.

30. When Plaintiff appeared for a meeting regarding his report to Deloitte Partner Deborshi Dutt and Brenda Arends of HR on February 16th 2018, HR showed no interest in the matter reported but instead wrongly accused the Plaintiff of being inebriated on two (2) different occasions and asked the Plaintiff to sign a Letter of Reprimand admitting he was inebriated on two (2) separate events on two (2) different dates otherwise his employment would be terminated.

31. Brenda Arends further advised that if the Plaintiff did not sign the Letter within two (2) days, his employment would be terminated. On the same phone call, the Partner Deborshi Dutt told the Plaintiff "we are watching you" and "there will be consequences to such actions".

32. Plaintiff did not sign the letter and, instead, produced multiple witnesses to confirm that he was sober at the other event and of his underlying medical condition.

33. Defendant continued to single out, discriminate against and harass the Plaintiff throughout 2018. Upon information and belief, the Defendant carried out an ongoing

9

scheme to intimidate, harass and force the Plaintiff out of the company because Defendant knew it would be illegal to terminate the Plaintiff based upon his medical condition and temporary disability which occurred when his allergies were triggered. Upon information and belief, Defendant did not want to continue to employ Plaintiff due to his life-threatening allergies but, instead, sought to retaliate against the Defendant for defending himself with proof of his medical condition.

34. On or about March 6th, 2018, Sachin Shirwalkar, Manager, Deloitte Consulting, Plaintiff's supervisor on the 21st Century Fox project, released him from the project two weeks after starting, claiming that he found a subject matter expert for the role who was more qualified than Plaintiff. It later turned out the purported subject matter expert was, in fact, a fresh college graduate with close to 1.5 years of experience.

35. In another instance, on or about May 30th 2018, Kartik Nagaraja, Sr. Manager, Deloitte Consulting, told the Plaintiff that as an Indian national post termination, the Plaintiff would have less than two months to find another job or leave the country, thus intimidating and threatening the Plaintiff with both termination and deportation.

36. In or about June 8th 2018, Plaintiff's Counselor, Sai Hampankatta, Sr. Manager, Deloitte Consulting, confessed to the Plaintiff that he was being given a poor rating per an email she received from the HR. The email specified that the Plaintiff's rating would not change regardless of his work or the positive opinions of other supervisors. Upon information and belief, Plaintiff was singled out as against similarly situated employees who did not suffer from life-threatening allergies and given a permanently poor rating due to his medical condition.

37. On or about early July 2018, project supervisors Anand Sairam, Sr. Manager, Deloitte

10

Consulting, and Tushar Sangale, Manager, Deloitte Advisory, were trying to release the Plaintiff from the Bausch Health project. When the Plaintiff confronted the Manager, Tushar, he confessed to the Plaintiff that the Sr. Manager, Anand, asked Tushar to release the Plaintiff from the project, saying "lets release him". However, given his good work, Manager Tushar stepped forward to save the Plaintiff's from getting released from the project. The Defendant later won ~$1.2 Million project deal from Bausch Health based on Plaintiff's and his team's work.

38. On or about August 30th, 2018, Brian Zhong, Sr. Manager, Deloitte Consulting, in spite of the Plaintiff's fantastic project work which secured great appreciation from the client, acted with hostility towards Plaintiff, falsely claiming that he observed 'gaps and empty spaces' on the Plaintiff's near perfect work and that the Plaintiff's performance deteriorated when he heard he was not getting any bonus for his last year's work. Five weeks after joining the Ball Corporation project, Brian Zhong released the Plaintiff from the project, admitting to the Plaintiff that he was getting pressure from the Partner and HR to release the Plaintiff from the project.

39. In September and October 2018, the Plaintiff's submitted his profile for various client projects on the internal job portal, but his Resource Manager (RM) kept closing his project role submissions requests citing - 'Position Closed, Not selected'. Upon information and belief, Plaintiff was singled out and treated differently than similarly situated employees who did not suffer from life threatening allergies. Upon information and belief, the project role submission requests submitted by other similarly situated employees who did not suffer from allergies were not immediately closed.

40. Defendants ultimately terminated the Plaintiff's employment over email on November

11

5th 2018 while the Plaintiff was on a sick leave with his three-week paid time leave starting the next day.

41.    After termination, Defendants continued to harass the Plaintiff by intentionally revoking his access to Deloitte's transition website where the Plaintiff could apply for jobs at other firms. Upon information and belief, he was treated differently than similarly situated former employees who did not suffer from life threatening allergies.

42.    Upon information and belief, Defendants also made sure the Plaintiff could not secure alternate employment by coordinating with and conferring with the Human Resource departments of prestigious firms like Google, D.E. Shaw and IBM to prevent Plaintiff from securing alternate visa-sponsored employment.

43.    The harassment and discrimination perpetuated by Defendant has caused the Plaintiff not only monetary damages but also emotion distress, pain and suffering.

## AS AND FOR A FIRST CAUSE OF ACTION
### HARASSMENT, DISCRIMINATION, HOSTILE WORK
### ENVIRONMENT, WRONGFUL TERMINATION UNDER NYCHRL

44.    Plaintiff incorporates and re-alleges by reference the allegations of paragraphs 1 to 43 as if fully set forth herein.

45.    Defendant discriminated against Plaintiff by subjecting him to a discriminatory, hostile and intimidating work environment that resulted in an adverse employment action, in violation of the NYC Admin. Code §8-107. Upon information and belief, Defendant singled-out the Plaintiff and treated him differently from similarly situated employees who do not suffer from life-threatening allergies or disabilities, by harassing the Plaintiff and by maintaining a pervasive atmosphere perpetuating discrimination and a hostile

12

NYSCEF DOC. NO. 1

work environment before terminating Plaintiff's employment.

46. As a result of the Defendant's conduct, Plaintiff has suffered monetary damages, pain and suffering and emotional distress. As such, Plaintiff seeks damages, including attorneys' fees, on the First Cause of Action in an amount to be determined at trial, but in no event less than $1,000,000.00.

## AS FOR A SECOND CAUSE OF ACTION
## RETALIATION UNDER NYCHRL

47. Plaintiff incorporates and re-alleges by reference the allegations contained in paragraphs 1-46 as if fully set forth herein.

48. Under the NYCHRL it is unlawful discriminatory practice for an employer to retaliate or discriminate in any manner on the basis of an employee's complaints about unlawful discrimination or a hostile work environment. A *prima facie* case of retaliation under the NYCHRL is demonstrated when a party participated in a protected activity, the defendants knew about his participation, the defendants took an employment action that disadvantaged the plaintiff and there is a causal connection between the protected activity and the negative employment action.

49. In this case, Plaintiff advised his supervisors and Human Resources that he suffered from life-threatening allergies and a temporary disability in the event the allergies were triggered. Once Defendant became aware of Plaintiff's medical condition, Defendant harassed and retaliated against the Plaintiff by harassing the Plaintiff and terminating Plaintiff's employment despite Plaintiff's excellent work performance.

50. Defendant's actions constitute unlawful retaliation for which the Plaintiff has suffered

13

FILED: NEW YORK COUNTY CLERK 02/01/2019 01:36 PM
INDEX NO. 151144/2019
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 02/01/2019

damages.

51.    As such, Plaintiff seeks damages on the Second Cause of Action including back pay, front pay, compensatory damages, punitive damages, pain and suffering, and attorney's fee in an amount to be determined at trial, but in no event less than $1,000,000.00.

## AS FOR A THIRD CAUSE OF ACTION
### VIOLATIONS OF NYS HUMAN RIGHTS LAW

52.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 51 of the Complaint as if the fully set forth herein.

53.    Defendant intentionally and/or negligently discriminated against the Plaintiff in violation of the NYSHRL by singling out the Plaintiff and treating him differently from similarly situated employees who do not suffer from life-threatening allergies, by harassing the Plaintiff and by maintaining a pervasive atmosphere perpetuating discrimination and a hostile work environment.

54.    Defendant discriminated against the Plaintiff because his medical condition and disability.

55.    As a result of the Defendant's violations of the NYSHRL, Plaintiff has lost pay and benefits and suffered substantial emotional distress, and pain and suffering. As such, Plaintiff seeks damages on the Third Cause of Action in an amount to be determined at trial, but in no event less than $1,000,000.00.

## AS FOR A FOURTH CAUSE OF ACTION
### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

56.    The Plaintiff repeats and re-alleges all allegations contained in paragraphs 1 through 55

14

as if fully set forth herein.

57.     Defendant engaged in, instigated, and directed a course of extreme and outrageous conduct with the intention of causing, or with reckless disregard of the probability of causing, emotional distress to Plaintiff.

58.     As a proximate result of the Defendant's action, Plaintiff suffered severe or extreme emotional distress. As such, Plaintiff seeks damages on the Fourth Cause of Action in an amount to be determined at trial, but in no event less than $1,000,000.00.

**WHEREFORE**, the Plaintiff demands judgment against Defendant in the amount set forth by a jury and for relief requested herein, back pay with prejudgment interest and all the fringe benefits to which he is entitled; pain and suffering, front pay and benefits; actual and punitive damages, and costs incurred because of the Defendant's unlawful behavior; including costs, disbursements, and attorney's fees to the extent permitted by law, and for such and other further relief that this Court deems just, proper and equitable.

Dated: New York, New York
        January 31, 2019

Yours, etc.,

VANDAMME LAW FIRM, P.C.
/s/ *Hendrick Vandamme*
Hendrick Vandamme, Esq.
46 Trinity Place, 3rd Floor
New York, New York 10006
Tel: 212-641-0613/212-851-6916

15

Case 1:18-cv-10578 Document 1-2 Filed 11/14/19 Page 18 of 22

## VERIFICATION

Hendrick Vandamme, an attorney for the plaintiff and duly admitted to practice in the Courts of the State of New York, affirms the following statements to be true under the penalties of perjury, pursuant to CPLR 2016:

I have read the complaint and know the contents to be true except to the matters stated to be alleged on information and belief, and as to those matters, I believe them to be true.

The source for this information and the ground for my belief are derived from the file maintained in the normal course of business by the attorneys for the plaintiff.

Since my firm maintains an office in New York County and the plaintiff resides in Suffolk County, the complaint was affirmed by me.

Dated: New York, New York
       January 31, 2019

                                    /s/ Hendrick Vandamme
                                    Hendrick Vandamme, Esq.

16

## VERIFICATION

Hendrick Vandamme, an attorney for the plaintiff and duly admitted to practice in the Courts of the State of New York, affirms the following statements to be true under the penalties of perjury, pursuant to CPLR 2016:

I have read the complaint and know the contents to be true except to the matters stated to be alleged on information and belief, and as to those matters, I believe them to be true.

The source for this information and the ground for my belief are derived from the file maintained in the normal course of business by the attorneys for the plaintiff.

Since my firm maintains an office in New York County and the plaintiff resides outside of New York County, the complaint was affirmed by me.

Dated: New York, New York
February 4, 2019

/s/ Hendrick Vandamme
Hendrick Vandamme, Esq.

1

Tritto Lisella, Yvonne

FLOOR: 40   MSC: 40W157   ROOM:

999900456870

P.LIFT UPPER STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS. PEEL OFF AND APPLY TO TOP LINE

USPS CERTIFIED MAIL

9214 8969 0059 7939 1958 21

201902050471
DELOITTE CONSULTING LLP
30 ROCKEFELLER PLAZA
NEW YORK NY, 10112

FROM: DEPT. OF STATE - ALBANY
CARR: United States Postal Service
TRK#: 92148869005793915821
RCVD: 2/11/2019  1523     AT: NYR

TO:   Tritto Lisella, Yvonne
PH:   2124924243
AT:   NYK    NEW YORK 1221
PCS: 1

DOS 470 (Rev. 10/09)

**DEPARTMENT OF STATE**
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231-0001

Return Services Requested