# Exhibit F

Case 1:19-cv-10578-AJN-SDA   Document 1-6   Filed 11/14/19   Page 2 of 39

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

-----------------------------------------------------------------------X

ASHU SHUKLA,                                           Index No.: **151144/2019**

                                   Plaintiff,

         -against-

                                               **AMENDED COMPLAINT**

DELOITTE CONSULTING, LLP,

                                   Defendant.

-----------------------------------------------------------------------X

Plaintiff, ASHU SHUKLA (hereinafter "Plaintiff"), as and for his verified Complaint

against Defendant DELOITTE CONSULTING, LLP, ("Defendant"), alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction of the claims that arise under New York laws.

2.     Venue is proper because at least one of the parties resides in New York County.

3.     Plaintiff ASHU SHUKLA is a resident of New Jersey and a former employee of the

    Defendant.

4.     Upon information and belief, Defendant DELOITTE CONSULTING, LLP, is a foreign

    corporation with its principal place of business located 30 Rockefeller Plaza, New York,

    NY 10112.

5.     This is a civil action seeking monetary relief, compensatory damages, disbursements,

costs and fees for violations of Plaintiff's rights resulting from wrongful termination, discrimination, harassment, hostile work environment, violation of New York State employment laws, and retaliation.

6.    Specifically, Plaintiff alleges that Defendant negligently, intentionally, wantonly, recklessly, and knowingly sought and did wrongfully deprive him of him employment, position, title, and pay through discrimination, harassment, and retaliation. Plaintiff alleges that Defendant purposefully and intentionally discriminated against him, retaliated against him by creating a hostile work environment, and wrongfully terminated his employment.

7.    Plaintiff alleges that the Defendant created a workplace atmosphere that was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of Plaintiff's employment with Defendant.

8.    The alleged acts against Plaintiff were done knowingly, purposely, and with all intentions of depriving him of his right to be free of discrimination and retaliation within his employment with the defendant.

## PARTIES AND RELEVANT INDIVIDUALS

9.    Plaintiff ASHU SHUKLA is a former employee of Defendant DELOITTE CONSULTING, LLP, ("Defendant").

10.    Defendant provides audit, tax, consulting, enterprise risk and financial advisory services around the world. Defendant hires employees to provide consulting services to companies around the world.

11.    Defendant employs over 287,000 employees. In 2018, Defendant had total revenues of over $43,000,000,000.00

12.    Defendant is subject to state and federal employment laws of the State of New York.

Case 1:19-cv-10578-AJN-SDA   Document 1-6   Filed 11/14/19   Page 4 of 39

## JURISDICTION

13.     Supreme Court, New York County, has subject matter jurisdiction over this matter since the Defendant maintains a place of business New York County where the Plaintiff was employed.

## FACTS

14.     Plaintiff ASHU SHUKLA is a 34 -year old male of Indian national heritage who suffers from serious allergies which cause anaphylactic reactions and disability when triggered.

15.     Plaintiff was awarded a Bachelor's degree in Electronics and Telecommunication Engineering in 2006 from India, and a Master's degree in Information Systems in 2010 from New York University – Courant School of Mathematics and Stern School of Business. Using this education, Plaintiff has amassed over 10 years of experience in the Technology Consulting Industry.

16.     Approximately 9 years into his consulting career, in October, 2016, Plaintiff was offered a position as Senior Consultant in the Defendant's New York office. After accepting the offer and clearing various background checks, the Plaintiff commenced working in December, 2016.

17.     As employee for Defendant, Plaintiff enjoyed success in managing and delivering several projects where he helped the Defendant and Defendant's clients develop and implement solutions and improvements to their businesses. He was praised for his work both by Defendant's leadership and by Defendant's clients. In 2017, the Plaintiff was also honored with the Deloitte US Consulting Business Solution Award after winning a cross Deloitte Consumer & Industrial Products (C&IP) practice solution competition

Case 1:19-cv-10578-AJN-SDA   Document 1-6   Filed 11/14/19   Page 5 of 39

Honors award on Consumer Product ideation challenge.

### Discrimination based on Medical Condition / Disability

18.    In around fall of 2017, the Plaintiff was advised that he would be sent on a project for JP Morgan in London in early 2018 and that he should take steps to obtain a UK visa for that purpose.

19.    On December 14, 2017, Plaintiff attended a Deloitte year-end event where alcohol was served to all attendees. After drinking one-and-half of the alcoholic drinks served to him, the Plaintiff suffered a serious anaphylactic reaction, where he remembers feeling a choking sensation caused by his throat swelling shut and began to lose consciousness. The Plaintiff does not remember the events after that. That night, he vaguely remembered, two Deloitte partners had carried him to a hotel.

20.    The following morning, the Plaintiff reported the events of the prior evening and his condition to one of the Deloitte Partners, Michael Fernandez, who had carried him to a hotel, by both email and phone. Michael first contacted the Plaintiff over email. In the morning, Plaintiff continued to suffer breathing difficulty, experienced itchy throat and observed rashes and hives on his body. Eight months before the event, in New York, the Plaintiff was tested and diagnosed with potentially life-threatening allergies that could result in anaphylaxis, a condition for which the Plaintiff was prescribed an EpiPen. Upon information and belief, the drinks and food served and consumed contained allergens which triggered an allergic reaction in the Plaintiff, rendering him temporarily disabled.

21.    On around December 18, 2017, three days after Plaintiff's anaphylactic reaction, Plaintiff was advised that he would no longer be sent to work on the JP Morgan project in the UK. Although the Plaintiff had already purchased a plane ticket and obtained his visa to travel, the project leader told him that she was getting "pressure from above" not

Case 1:19-cv-10578-AJN-SDA   Document 1-6   Filed 11/14/19   Page 6 of 39

to put him on the project. The project leader also accused the plaintiff of buying an airplane ticket without her approval, when in-fact the air-ticket was a requirement placed by the UK consulate to obtain a visa and the same was discussed with the project leader.

22.     Soon thereafter, it became apparent that the Defendant did not want to assign the Plaintiff to any projects and intentionally sent the Plaintiff to client interviews for which he was destined not to be hired due to lack of relevant experience. For instance, approximately a week after learning that he would not work on the JP Morgan project, the Plaintiff was asked to interview at a client on leading Data Governance training project for 40,000+ employees globally. Since the Plaintiff had no experience in this domain, he was not assigned to the project. Similarly, the Defendant asked the Plaintiff for project that required deep knowledge of health care industry which the Plaintiff did not have. Upon information and belief, Plaintiff was singled out due to his medical condition and treated differently from other employees in this regard. In fact, Plaintiff was treated differently than he had been treated before the Defendant became aware of his medical condition and disability. Never before had he been sent to interview for projects he was not qualified for.

23.     During the course of next several months, various supervisors began harassing the Plaintiff regarding his anaphylactic reaction by mocking him for not being able to drink alcohol, hinting that he would not be getting a bonus due to the Plaintiff's allergic reaction and threatening to send the Plaintiff to purported projects in North Korea and Syria as punishment.

24.     Specifically, Anand Sairam, Sr. Manager, Deloitte Consulting, said "I will send you to North Korea", and "I will send you to Syria". Kartik Nagaraja, Sr. Manager, Deloitte

Consulting, and Ajay Sanipani, Manager, Deloitte Consulting, mocked the Plaintiff in front of multiple people for not being able to drink alcohol.

25. Sriram Ramamurthy, Sr. Manager, Deloitte Consulting, called the Plaintiff on the evening of the Bonus day on August 27th 2018, mocked him for not getting any bonus, inquired multiple times about Plaintiff's lack of bonus, and harassed the Plaintiff by suggesting that he would be released from the Ball Corporation project the Plaintiff had been working on. Four (4) days later the Plaintiff was, in fact, released from the project.

26. Due to his serious allergic reaction and temporary disability caused when the allergy is triggered, Plaintiff was singled out and treated differently from similarly situated employees who did not suffer from life-threatening allergies or disabilities. Upon information and belief, similarly situated employees who did not suffer from life-threatening allergies or disabilities did receive bonuses for their work and were not harassed on an ongoing basis by their supervisors.

27. Despite the Plaintiff's allergies, Plaintiff's supervisors forced him to participate in drinking alcohol in at least one other event over Plaintiff's protests and while Plaintiff openly carried an EpiPen for his condition. The Plaintiff showed his rashes after drinking a sip of Wine and texted pictures as evidence to his Deloitte Manager, Manoj Kumar.

28. Early in 2018, although the Plaintiff was not given the opportunity to take on new projects for outside clients, the Plaintiff continued working hard on internal firm initiatives on Cognitive analytics and artificial intelligence. Based on his work, Plaintiff not only won the admiration of his peer colleagues but the Defendant also won a $10+ million-dollar contract with Takeda.

29.    In around February, 2018, the Plaintiff took part in firm-wide ethics, integrity and compliance training. Based on the training he received, he reported an observed misbehavior from his previous project leadership to Human Resources (HR). Specifically, Plaintiff reported that, though it was his duty to point out instances where projects were mismanaged and to suggest improvements, when he did so during a Fall 2017 project based in Los Angeles, he was threatened against raising such issues with supervisors in higher positions and learned it would 'obviously result in a bad rating', he faced unprofessional treatment by his supervisor and finally removed from the project by his immediate supervisors.

30.    When Plaintiff appeared for a meeting regarding his report to Deloitte Partner Deborshi Dutt and Brenda Arends of HR on February 16th 2018, HR showed no interest in the matter reported but instead wrongly accused the Plaintiff of being inebriated on two (2) different occasions and asked the Plaintiff to sign a Letter of Reprimand admitting he was inebriated on two (2) separate events on two (2) different dates otherwise his employment would be terminated.

31.    Brenda Arends further advised that if the Plaintiff did not sign the Letter within two (2) days, his employment would be terminated. On the same phone call, the Partner Deborshi Dutt told the Plaintiff "we are watching you" and "there will be consequences to such actions".

32.    Plaintiff did not sign the letter and, instead, produced multiple witnesses to confirm that he was sober at the other event and of his underlying medical condition.

33.    Defendant continued to single out, discriminate against and harass the Plaintiff throughout 2018. Upon information and belief, the Defendant carried out an ongoing

Case 1:19-cv-10578-AJN-SDA   Document 1-6   Filed 11/14/19   Page 9 of 39

scheme to intimidate, harass and force the Plaintiff out of the company because Defendant knew it would be illegal to terminate the Plaintiff based upon his medical condition and temporary disability which occurred when his allergies were triggered. Upon information and belief, Defendant did not want to continue to employ Plaintiff due to his life-threatening allergies but, instead, sought to retaliate against the Defendant for defending himself with proof of his medical condition.

34.   On or about March 6th, 2018, Sachin Shirwalkar, Manager, Deloitte Consulting, Plaintiff's supervisor on the 21st Century Fox project, released him from the project two weeks after starting, claiming that he found a subject matter expert for the role who was more qualified than Plaintiff. It later turned out the purported subject matter expert was, in fact, a fresh college graduate with close to 1.5 years of experience.

35.   In another instance, on or about May 30th 2018, Kartik Nagaraja, Sr. Manager, Deloitte Consulting, told the Plaintiff that as an Indian national post termination, the Plaintiff would have less than two months to find another job or leave the country, thus intimidating and threatening the Plaintiff with both termination and deportation.

36.   In or about June 8th 2018, Plaintiff's Counselor, Sai Hampankatta, Sr. Manager, Deloitte Consulting, confessed to the Plaintiff that he was being given a poor rating per an email she received from the HR. The email specified that the Plaintiff's rating would not change regardless of his work or the positive opinions of other supervisors. Upon information and belief, Plaintiff was singled out as against similarly situated employees who did not suffer from life-threatening allergies and given a permanently poor rating due to his medical condition.

37.   On or about early July 2018, project supervisors Anand Sairam, Sr. Manager, Deloitte

Case 1:19-cv-10578-AJN-SDA Document 1-6 Filed 11/14/19 Page 10 of 39

Consulting, and Tushar Sangale, Manager, Deloitte Advisory, were trying to release the Plaintiff from the Bausch Health project. When the Plaintiff confronted the Manager, Tushar, he confessed to the Plaintiff that the Sr. Manager, Anand, asked Tushar to release the Plaintiff from the project, saying "lets release him". However, given his good work, Manager Tushar stepped forward to save the Plaintiff's from getting released from the project. The Defendant later won ~$1.2 Million project deal from Bausch Health based on Plaintiff's and his team's work.

38. On or about August 30th, 2018, Brian Zhong, Sr. Manager, Deloitte Consulting, inspite of the Plaintiff's fantastic project work which secured great appreciation from the client, acted with hostility towards Plaintiff, falsely claiming that he observed 'gaps and empty spaces' on the Plaintiff's near perfect work and that the Plaintiff's performance deteriorated when he heard he was not getting any bonus for his last year's work. Five weeks after joining the Ball Corporation project, Brian Zhong released the Plaintiff from the project, admitting to the Plaintiff that he was getting pressure from the Partner and HR to release the Plaintiff from the project.

39. In September and October 2018, the Plaintiff's submitted his profile for various client projects on the internal job portal, but his Resource Manager (RM) kept closing his project role submissions requests citing - 'Position Closed, Not selected'. Upon information and belief, Plaintiff was singled out and treated differently than similarly situated employees who did not suffer from life threatening allergies. Upon information and belief, the project role submission requests submitted by other similarly situated employees who did not suffer from allergies were not immediately closed.

40. Defendants ultimately terminated the Plaintiff's employment over email on November

5th 2018 while the Plaintiff was on a sick leave with his three-week paid time leave starting the next day.

41.     After termination, Defendants continued to harass the Plaintiff by intentionally revoking his access to Deloitte's transition website where the Plaintiff could apply for jobs at other firms. Upon information and belief, he was treated differently than similarly situated former employees who did not suffer from life threatening allergies.

42.     Upon information and belief, Defendants also made sure the Plaintiff could not secure alternate employment by coordinating with and conferring with the Human Resource departments of prestigious firms like Google, D.E. Shaw and IBM to prevent Plaintiff from securing alternate visa-sponsored employment.

**Discrimination Based on Gender**

43.     On January 11th 2018, more than three weeks after plaintiff's anaphylaxis event [on December 14th 2017], a 61-year old woman employee of the defendant, Christina Young, filed confidential allegations against the plaintiff with Defendant Human Resource professionals for getting drunk and inadvertently touching her backside at a holiday party. This allegation was never mentioned to the plaintiff during his employment, and Plaintiff learned about this allegation in its entirety in mid-2019 after receiving defendant's discovery response.

44.     As a matter of fact, Deloitte Partner Deborshi Dutt and HR Professional Brenda Arends wrongly accused the plaintiff for being inebriated at two different events, as mentioned on paragraph 30-32 of the complaint, and threatened him with

Case 1:19-cv-10578-AJN-SDA   Document 1-6   Filed 11/14/19   Page 12 of 39

termination. However, Plaintiff talked about his underlying medical condition for the first event, and produced several witnesses against defendant's claims stating that he was sober for the second event. The witnesses were interviewed by the defendant HR. Defendant as such singled out the plaintiff, discriminated against him, harassed him and filed falsified allegations against the plaintiff.

45.     In January and February 2018, on her follow-up interrogatory calls with Deloitte Human Resource Professionals, elderly woman employee Christina Young, first stated that touching her backside incident happened on January 10th 2018. Then on a call on February 27th 2018, she changed her statements, and stated that the incident happened at the December 14th 2017 event, and she got the dates confused. In contrast, however, on December 14th 2017, the plaintiff suffered a serious life-threatening anaphylactic reaction at the event and became unconscious. Secondly, on January 10th 2018, plaintiff attended the event for just 40-50 minutes. Plaintiff has call records to prove his location, and has produced supporting witnesses to prove that he was sober. Christina Young's change of date statements were made a month after the plaintiff produced his supporting witnesses for the January 10th event.

46.     Upon information and belief, Christina Young, as such, used and abused the very law that is meant to protect her as a female, as a weapon against the plaintiff. Defendant as such singled out the plaintiff, discriminated against him on the basis of his gender, filed internal falsified allegations against the plaintiff, threatened him with termination and supported a female Deloitte professional in her false claims against the plaintiff.

47.    Soon after Christina Young's allegations on January 11th 2018, during the course of next several months, various female Deloitte Human Resource Professionals and female Deloitte professionals began harassing the plaintiff and abusing their power against the plaintiff on the basis of his gender. See examples mentioned below:

48.    In early January 2018, plaintiff got staffed and started on an internal firm development Mergers and Acquisitions (M&A) growth accelerator project. Plaintiff's female team members, Karma Porter, Fanzi Mao Pitzer, Tanya Srivastava were very pleased with plaintiff's background and skillset. However, on January 12th 2018, one day after Christina Young filed her falsified allegations, plaintiff's female resource manager, Amye Hanes, directed the M&A team to immediately release the plaintiff from the project. Not knowing the background, both Plaintiff and his female colleagues on the project were stunned and greatly moved by Deloitte management's interference and decision. Defendant as such singled out the plaintiff, discriminated against him on the basis of his gender, harassed him, and forestalled his professional and career growth.

49.    On January 18th 2018, a Defendant's female Human Resource Professional, Katie Tiller Wittenbraker, had a discussion with Christina Young, as documented in her notes. Although the plaintiff has no knowledge whether this conversation actually took place, the plaintiff has several reasons to challenge the facts presented in this conversation. For example, Katie Tiller Wittenbraker quoted "They would have meetings setup, and Tina would try to find him in office and would find him with the client, and having the meeting with the client without her present". In reality, the plaintiff had no such meetings as the client project, which was due to start in London,

did not even start. This is consistent with allegations mentioned on paragraph 21 of the complaint, which state that the plaintiff was released from the JP Morgan Chase project on December 18th 2017 before it even started. Defendant as such singled out the plaintiff, filed falsified allegations against him, discriminated against and victimized the plaintiff on the basis of his gender, harassed him, forestalled his professional and career growth.

50.   Similar, on February 14th 2018, Katie Tiller Wittenbraker's had a conversation with Deloitte Senior Manager Ashley Scorsatto. Although the plaintiff has no knowledge whether this conversation actually took place, the plaintiff has several reasons to challenge the facts presented in this conversation. For example, Katie Tiller Wittenbraker quoted, "Plaintiff was not producing any documents. Plaintiff would deflect and blame another member of the team". In reality, the plaintiff and his team together solved more than 100 open technical issues in a short time span of 3-4 weeks, and maintained comprehensive documents to track client meeting, issues and solutions. After receiving defendant's response to discovery documents, Plaintiff was stunned and greatly moved by Deloitte management's obnoxious statements that have no relevance what so ever to facts. Defendant as such singled out the plaintiff, discriminated against and victimized him on the basis of his gender given another female employee's falsified sexual harassment allegations against him, and forestalled his professional and career growth.

51.   On February 16th 2018, on his call with Defendant's female Human Resource Manager Brenda Arends, plaintiff stated that "he has a medical condition, he had less than 2 drinks and his physician said that drinking alcohol on empty stomach

Case 1:19-cv-10578-AJN-SDA  Document 1-6  Filed 11/14/19  Page 15 of 39

likely exacerbated his underlying medical condition." This is consistent with the medical reports produced by the plaintiff as evidence. In contrast, Brenda Arends altered plaintiff's statements and wrote in her note that "plaintiff stated he had 2-3 drinks and his physician stated he got so drunk because he was drinking on empty stomach," thus changing the context and meaning of the entire conversation. This shows that defendant, Deloitte Consulting LLP, is being represented by extremely biased and discriminatory female Human Resource (HR) managers such as Brenda Arends, who wantonly & mercilessly discriminated against the plaintiff due to his medical condition / disability, on terms or privileges of his employment because he was a male and refused to sign her fabricated letter of reprimand [as mentioned on paragraph 30 of the complaint], and given another female employee's falsified sexual harassment allegations against the plaintiff at the height of the "Me Too" movement in 2018.

52.     On March 6th 2018, Plaintiff stated to the Defendant's female Human Resource Manager Joanna Rohde that "he has allergies of active nature, he carries an Epipen, he consumed alcoholic beverage at the event, he blacked out and likely suffered an anaphylactic reaction." [Anaphylaxis could have resulted from alcohol, other ingredients in the alcoholic beverage including coloring agents, preservatives and/or from exacerbation of his underlying medical illness.] In contrast, however, Joanna Rohde herself drew a direct conclusion and wrote in her notes that the "plaintiff's doctor said plaintiff is allergic to alcohol.". Thus, the Deloitte Human Resource professional knowingly captured selected piece of information to their advantage, discriminating against the plaintiff and his privileges of employment on the basis of

his gender, and in light of the given falsified sexual harassment allegations.

53. On multiple notes, Defendant's female Human Resource Manager, Brenda Arends, mentions that the plaintiff has "issues with women, and women in supervisory positions". However, in contrast, several female members of Deloitte, who were not under the influence of Brenda Arends and/or her female colleagues, praised plaintiff's work ethics, demeanor and professionalism. For example, Danica Devito invited the plaintiff to present an information session on Deloitte's behalf to Duke University Management school, Morgan Carlon and Megan Gorges praised plaintiff's work ethics, Lydia Schffield said "she really enjoyed working with the plaintiff", Shelly Rescober said "it was nice working with the plaintiff", Aditi Shankar and Rushika Patel who thoroughly checked all of plaintiff past project performances and references on February 23rd 2018 said 'it was great to have the plaintiff onboard and they look forward to working with plaintiff', and Karma Porter, Fanzi Mao Pitzer, Tanya Srivastava said they really liked working with the plaintiff. Similar appreciation was given by client Chandra Miranda and Shruti Nayyar. This shows that Defendant Human Resource Managers as such singled out the plaintiff, discriminated against him on the basis of his gender, denied him promotion, pay rise, bonus and training opportunities given to similarly situated female employees, deprived him of project opportunities, treated him differently than similarly situated employees who did not have a sexual harassment allegation against them, and knowingly forestalled his professional and career growth.

54. On October 4th 2018, approximately one month after not paying plaintiff his yearly bonus for which he worked so hard, Defendant's female Human Resource Manager,

Kacey Bridges, mentioned in her note to Brenda Arends, that the plaintiff's senior manager reported in his performance review that the "plaintiff has done a good job in the initial few weeks of the project but his productivity deteriorated afterwards. It seems like the plaintiff had concerns over the non-project Deloitte practice and this affected his work". Brenda Arends replied to Kacey Bridges saying that they need to move forward with plaintiff's separation regardless of plaintiff's performance or positive opinions by his supervisor. When, in-fact, plaintiff's senior manager confessed to the plaintiff that he was getting pressure from a partner and HR Brenda Arends to release him from the project as mentioned on paragraph 38 of the complaint. Defendant as such singled out the plaintiff and targeted him, discriminated against him on the basis of his gender, denied him promotion, pay rise, bonus and training opportunities given to similarly situated female employees, deprived him of project opportunities, treated him differently than similarly situated employees who did not have a sexual harassment allegation against them, and knowingly forestalled his professional and career growth.

55.    On October 12th 2018, Defendant's female Human Resource Manager, Brenda Arends, mentioned in her note that "after being rolled off for performance, plaintiff was staffed in a more strategy focused role, but the TL shared with Kartik that he is experiencing the same performance concerns". In contrast, however, plaintiff got a great performance rating on this referenced project by Deloitte Senior Manager, Anand Sairam, and great appreciation from Deloitte Leadership Director Peter Harbin. Defendant as such singled out the plaintiff, discriminated against him on the basis of his gender by maintaining different standards for plaintiff's pay, job

classification, benefits and promotions than similarly situated female employees,

deprived him of opportunities, treated him differently than similarly situated

employees who did not have a sexual harassment allegation against them, and

knowingly forestalled plaintiff's professional and career growth.

56.    Defendant's female Human Resource Manager, Brenda Arends, and plaintiff's

female Counselor, Sai Hampankatta worked together exclusively to orchestrate a

harassment and discrimination campaign against the plaintiff, first staffing him on

projects in which he had very little to no relevant industry experience, creating a

hostile environment on the project for the plaintiff, asking the project leaders to

release him from the project and finally publishing to their human resource

colleagues that the plaintiff again staffed himself on a project and needs to be

released immediately. For example, on Kaiser Permeante project, Senior Manager

Tim Van Ee, confessed to the plaintiff that plaintiff's release request came from Sai

Hampankatta, who got the instructions from plaintiff's Talent Manager, Brenda

Arends. Defendant as such singled out the plaintiff, discriminated against him on the

basis of his gender by maintaining different standards of project selection and

performance evaluation, deprived him of opportunities for which he had the right

skillsets, treated him differently than similarly situated employees who did not have

a sexual harassment allegation against them, and knowingly forestalled plaintiff's

professional and career growth.

57.    Similarly, double standards were being maintained by plaintiff's female Resource

Manager, Amye Hanes. After learning about plaintiff medical condition / disability,

it became apparent that the defendant did not want to assign the plaintiff to any

projects. For example, Amye Hanes praised the plaintiff's and his Financial Services skills on one hand, while at the same time, orchestrated a discrimination campaign against the plaintiff by sending him on projects where he had no experience and was destined not to be hired, like delivering data governance training for 40,000+ employees at client Scotia bank [as mentioned on Paragraph 22 of the complaint]. Similarly, In January 2018, after learning about purported sexual harassment allegations against the plaintiff, Amye Hanes denied plaintiff's staffing for the M&A growth accelerator project as mentioned above.

58.     Similarly, double standards were being maintained by plaintiff's female Resource Manager, Shanah Setzen, who made sure that the plaintiff did not get staffed on projects where he had the right skills citing 'Position closed, not selected' [as mentioned on Paragraph 39 of the complaint]. Thus, it is clear that Defendant as such singled out the plaintiff, discriminated against him on the basis of his medical condition/disability and gender, deprived him of opportunities for which he had the right skillsets, treated him differently than similarly situated employees who did not suffer from allergies and/or did not have a sexual harassment allegation against them, and knowingly forestalled plaintiff's professional and career growth.

59.     On or about April 6th 2018, Deloitte Human Resource executive, Austin Perez, coordinated with other female members of Deloitte Human Resource mentioned above, to falsify plaintiff's report regarding his ethics and integrity complaint described on paragraph 29 of this complaint, and wrongly stated that plaintiff would like to rescind his complaint as he no longer feels it necessary. Plaintiff was singled out, treated differently from other employees who did not have a sexual harassment

complaint or charge against them, discriminated based on his gender, and retaliated against by the defendant.

60.   Based on the above-mentioned facts, upon information and belief, it is evident that female members of the Deloitte Human Resource department, as mentioned above, have coordinated with project teams internally and falsified plaintiff's performance evaluation report for his Pfizer and Anthem projects. Plaintiff was singled out, treated differently from other employees in this regard, discriminated and retaliated against by the defendant. It is also possible that plaintiff's confidential medical information was leaked to other employees [mentioned on paragraphs 23 onwards of this complaint]

61.   In fact, highly skilled members of defendant's Human Resource department in general, and the above-mentioned officers specifically, used their experience, power and prestige to supposedly plan and orchestrate a discrimination, harassment & retaliation campaign against the plaintiff based on his gender. Very recently the defendant has also staged a harassment campaign against the plaintiff with email communications from fake people with names like Buttram, Buttarazzi and others, which are related to fake sexual harassment allegations. Plaintiff was singled out, treated differently from other employees who did not have a sexual harassment complaint or charge against them, discriminated based on his gender, and retaliated against by the defendant. In spite of the harassment, discrimination and fake allegation efforts, Defendants benefitted financially from Plaintiff's forced labors, intellectual contributions, and project and managerial contributions; and from trafficking in forced labors, intellectual contributions, and project and managerial

Case 1:19-cv-10578-AJN-SDA Document 1-6 Filed 11/14/19 Page 21 of 39

contributions of Plaintiff, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiff's life, health, wellbeing, and reputation, and finally harming Plaintiff's income, financial resources, and access to credit.

### Discrimination Based on National Origin

62. Plaintiff would like to reiterate paragraph 35 of the complaint: On or about May 30th 2018, Kartik Nagaraja, Sr. Manager, Deloitte Consulting, told the Plaintiff that as an Indian national post termination, the Plaintiff would have less than two months to find another job or leave the country, thus intimidating and threatening the Plaintiff with both termination and deportation.

63. Similarly, in-addition to mocking the plaintiff on his medical condition / disability, and threatening the plaintiff with termination and deportation, Kartik Nagaraja tried to plot plaintiff's release from the project by stating that client Business Analyst said 'he had no idea what plaintiff was doing'. Plaintiff immediately went and talked to the client business analyst who confessed to the plaintiff that there was a confusion because the business analyst was out-of-office for several days as his child was sick, and he was out-of-sync with project developments. Thus, Kartik Nagaraja further tried to create a hostile working environment for the plaintiff and made false claims against the plaintiff.

64. Around the same time, Plaintiff's good project performance was confirmed by client Katherine Nelligan, who praised plaintiff's hard work given his little knowledge on the subject area – [TJX] retail store and site characteristics, mainframe systems etc.

Due to change in business priorities, client stakeholders announced closure of the workstream plaintiff was working on in front of 25+ member audience. Project manager, Katherine Nelligan, wanted to extend plaintiff's role for the next related business technology project.

65. After the plaintiff sorted out the confusion between Kartik Nagaraja, Manoj Kumar and the client Business Analyst, plaintiff realized that he needs to move away from Kartik Nagaraja's project, and so he got staffed on another role. On plaintiff's release, Kartik Nagaraja admitted in front of 10+ member Deloitte onsite team that plaintiff was leaving as his work-stream ended, and he praised plaintiff's great work on the project. The entire team gave plaintiff a great sea-off dinner party. However, three months after these events, Kartik Nagaraja gave the plaintiff bad performance review, which plaintiff learned about after receiving the defendant's response. Thus, Plaintiff was singled out, treated differently from other employees who were not discriminated on the basis of their life-threatening allergies and national origin, discriminated and retaliated against by the defendant.

66. The Defendants organized and orchestrated recruitment fraud against the plaintiff based on his national origin. Upon information and belief, Defendants made sure the Plaintiff could not secure alternate employment by coordinating with and conferring with the Human Resource departments of prestigious firms like Google, D.E. Shaw and IBM to prevent Plaintiff from securing alternate visa-sponsored employment.

67. After termination, plaintiff applied to various jobs through Deloitte Marketplace website. A member of the Deloitte transition team, Aileen Baxter, had multiple coaching sessions with the plaintiff where she secured confidential information from

the plaintiff as to which all firms plaintiff was interviewing at, and allegedly coordinated either directly with those firms or indirectly through other Deloitte or non-Deloitte Human Resource managers to make sure that the plaintiff could not secure alternate full-time employment. Plaintiff was treated differently than Deloitte employees who successfully used Deloitte transition services and got recruited. After termination, plaintiff had less than 2-months to find another job per his Deloitte H1B visa transfer restrictions, and defendant and defendant's transition services made every effort possible to single out the plaintiff, and discriminate and retaliate against him on the basis of his national origin based visa restriction, so the plaintiff could not secure gainful alternate employment.

68.     On December 4th 2018, Plaintiff started interviewing at Teva Pharmaceuticals. On December 11th 2018, the Teva Pharma recruiter invited the plaintiff for his final round of interview.  Later that same day, on a meeting with Deloitte transition services coach, Aileen Baxter, the Plaintiff was asked where he was interviewing outside the Deloitte Market Place job portal. The plaintiff honestly mentioned to Aileen Baxter about his final round of interview with firm Teva Pharmaceuticals among other things.

69.     Next day, on December 12th 2018, early morning, Teva recruiter confirmed plaintiff's final round interview both by phone and email. The interview was scheduled for the next day, December 13th 2018. However, as the day progressed, Teva recruiter sent an email to the plaintiff canceling plaintiff's final round of interview, stating that the process has been put on hold. Based on direct evidence, and upon information and belief, it is evident that Aileen Baxter leaked plaintiff's

confidential information and coordinated either directly or indirectly though other Deloitte or non-Deloitte Human Resource managers to make sure that the plaintiff could not secure alternate full-time employment at Teva Pharmaceuticals. Aileen Baxter conspired against and prevented Plaintiff from seeking alternate private sector employment, thereby further harassing and retaliating against the plaintiff based on his national origin and visa restriction

70. Similarly, on December 11th 2018, plaintiff mentioned about his interviews at indeed.com and wayfair.com to Aileen Baxter. The interviews had similar outcome as above, Plaintiff got his rejection from indeed.com around December 13th 2018, and from wayfair.com on December 17th 2018. Thus, upon information & belief, Aileen Baxter conspired against and prevented Plaintiff from seeking alternate private sector employment, thereby further harassing and retaliating against the plaintiff based on his national origin and visa restriction

### Deprivation of Employment Rights, Recruitment Fraud, Illegal Activities And Abuse by Defendants

71. Plaintiff would like to reiterate Paragraphs 54-61, and 62-66 above in this section of the complaint, and claim that the Defendants organized and orchestrated deprivation of employment rights against the plaintiff.

72. Plaintiff would like to reiterate Paragraphs 66-70 above in this section of the complaint, and claim that the Defendants organized and orchestrated recruitment fraud against the plaintiff.

73. After termination, plaintiff applied to various jobs through Deloitte Marketplace website. As it turned out, Deloitte selectively released plaintiff's resume mainly to

Case 1:19-cv-10578-AJN-SDA   Document 1-6   Filed 11/14/19   Page 25 of 39

jobs that did not offer visa-sponsored employment in firms like McKesson, Kohls, Vanguard etc, or, upon information and belief, to firms where he was destined not to be hired. Deloitte transition services coach coordinated with potential future employers like Dr. Keurig Pepper, Microsoft, State Street and others, so that the plaintiff could not get selected. These were primarily jobs that the plaintiff applied through the Deloitte transition services marketplace website. Thus, defendant conspired against and prevented Plaintiff from seeking alternate private sector visa-sponsored employment, thereby, further harassing and retaliating against the plaintiff based on his national origin and visa condition

74. Defendants conspired against the plaintiff, and/or prevented and conspired to prevent Plaintiff from seeking alternate private sector employment, while Defendants and their enterprises have benefitted economically, socially, and politically from Plaintiffs labors during his employment, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiffs life, health, wellbeing, and reputation, and harming Plaintiffs income, financial resources, and access to credit.

75. Upon information & belief, Defendants engaged in illegal activities such as conspiring to, arranging, and intercepting Plaintiff's attempts to secure alternate employment by imaging his smartphone, intercepting and hacking telephone and internet communications with various employers and/or recruitment agencies. These actions may in future cause the Plaintiff to be late in numerous payments for mortgage, telephone service, internet service, and other essential services, create late payment penalties, and damaged Plaintiff's credit standing and credit availability.

These actions are part of an illegal pattern of peonage, control, and violation of civil and constitutional rights by Defendants.

76.  Defendants prevented and conspired to prevent Plaintiff from seeking alternate private sector employment, while Defendants and their enterprises have benefitted economically, socially, and politically from Plaintiffs labors during his employment, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiffs life, health, wellbeing, and reputation, and harming Plaintiffs income, financial resources, and access to credit.

77.  Defendants conspired to and engaged in employment fraud, recruitment fraud, tortious business interference and illegal activities to force Plaintiff to liquidate personal and real property, so that plaintiff could become destitute and homeless, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiffs life, health, wellbeing, and reputation, and harming Plaintiff's income, financial resources, and access to credit.

**Manipulation by Defendants endangering
Plaintiff and the Public in Public Places**

78.  On the week of August 27th 2018, the defendant's decided not to pay any bonus to the plaintiff. Senior Manager Brian Zhong kicked-off the week with change in behavior, aggressive attitude and hostility towards the plaintiff. Other events of the week are mentioned in paragraphs 25 and 38 of the complaint. As the week progressed in the state of Colorado, upon knowledge and belief, unidentified agents of defendant began to harass the plaintiff. These persons veered into the driving path

27

of or car parking lot of the plaintiff, while interfering with Plaintiff in these public places in an attempt harass and threaten the plaintiff.

79.    On one occasion, an unidentified vehicle zoomed, honked and passed the plaintiff more than once. On another occasion, the plaintiff, and an elderly person driving on the next lane had to abruptly bring their cars to a stop because an unidentified vehicle suddenly stopped in front. These harassing behaviors caused a simple trip to the office or hotel to become dangerous to Plaintiff and others, particularly the elderly.

80.    Plaintiff, without giving much details, briefly mentioned about these incidents to Senior Manager Brian Zhong on plaintiff's project release on August 30th 2018. Brian Zhong admitted that he was getting pressure from a Partner and HR to release the plaintiff from his project. Upon information and belief, these activities demonstrate Defendants pattern of harassment, and their intent to cause and create harm to Plaintiff through tampering, retaliation, control, and in violation of civil and constitutional rights in public places.

### Tampering and Retaliation against
### Witness, Victim, Informant by Defendants

81.    Defendants conspired to and continually tampered with and retaliated against Plaintiff, and Plaintiff efforts to expose and adjudicate defendant's illegal control of Plaintiff, forced labor, trafficking, violations of civil and constitutional rights, and other illegal acts of Defendants against Plaintiff thereby illegally constraining his civil and constitutional rights, endangering Plaintiff's life, health, wellbeing, and reputation, and harming Plaintiff's income, financial resources, and access to credit.

82.     Defendants conspired to and continually tampered with and retaliated against
Plaintiff to cover the Defendants original fraudulent and illegal acts, and/or other
durable pattern of frauds including manipulating the termination date of former
employees, colluding with plaintiff's previous counsel potentially before and likely
after his dismissal, failing to preserve electronic evidence, falsifying information,
thereby, illegally controlling Plaintiff, constraining his civil and constitutional
rights, endangering Plaintiffs life, health, wellbeing, and reputation, and harming
Plaintiffs income, financial resources, and access to credit.

### Abuse and Deprivation of Rights Under Color of Law

83.     Plaintiff is concerned that the highly resourceful and experienced defendant, will
further use the color of law to willfully create conditions to dismiss this case, engage
in adverse actions against plaintiff and further engage in a willful pattern of
violations of, and failure to protect as required by law, all forms of civil and
constitution rights of the plaintiff including common forms of self-determination,
personal liberty, petition of government, freedom from coercion, maintaining lawful
presence and employment in the United States, thereby illegally controlling the
plaintiff, constraining his civil and constitutional rights, endangering plaintiff's
health, well-being, reputation, and harming plaintiff's income, financial resources,
access to credit, employment options

84.     All the above stated harassment and discrimination perpetuated by Defendant
contained in paragraphs 1-84 has caused the Plaintiff not only monetary damages

but also emotion distress, pain and suffering.

## AS AND FOR A FIRST CAUSE OF ACTION
## HARASSMENT, DISCRIMINATION, HOSTILE WORK ENVIRONMENT, WRONGFUL TERMINATION UNDER NYCHRL

85.     Plaintiff incorporates and re-alleges by reference the allegations of paragraphs 1 through 84 as if fully set forth herein.

86.     Defendant discriminated against Plaintiff by subjecting him to a discriminatory, hostile and intimidating work environment that resulted in an adverse employment action, in violation of the NYC Admin. Code §8-107, and/or violation of title VII of Federal Civil Rights Act and Americans with Disabilities Act (ADA). Upon information and belief, Defendant singled-out the Plaintiff and treated him differently from similarly situated employees who do not suffer from life-threatening allergies or disabilities, by harassing the Plaintiff and by maintaining a pervasive atmosphere perpetuating discrimination and a hostile work environment before terminating Plaintiff's employment.

87.     Defendant discriminated against Plaintiff by subjecting him to a discriminatory, hostile and intimidating work environment that resulted in an adverse employment action, in violation of the NYC Admin. Code §8-107, violation of Stop Sexual Harassment in NYC Act and/or violation of title VII of Federal Civil Rights Act. Upon information and belief, Defendant singled-out the Plaintiff and treated him differently from similarly situated employees who did not experience gender-based discrimination and/or were not a victim of a falsified sexual harassment allegation, by harassing the Plaintiff and by maintaining a pervasive atmosphere perpetuating

discrimination and a hostile work environment before terminating Plaintiff's employment.

88. Defendant discriminated against Plaintiff by subjecting him to a discriminatory, hostile and intimidating work environment that resulted in an adverse employment action, in violation of the NYC Admin. Code §8-107, and/or violation of title VII of Federal Civil Rights Act. Upon information and belief, Defendant singled-out the Plaintiff and treated him differently from similarly situated employees who did not experience national-origin based discrimination and/or were not restricted by visa sponsored employment restrictions, by harassing the Plaintiff and by maintaining a pervasive atmosphere perpetuating discrimination and a hostile work environment both before and after terminating Plaintiff's employment.

89. As a result of the Defendant's conduct, Plaintiff has suffered monetary damages, pain and suffering and emotional distress. As such, Plaintiff seeks damages, including attorneys' fees, on the First Cause of Action in an amount to be determined at trial, but in no event less than $1,000,000.00.

## AS FOR A SECOND CAUSE OF ACTION
## RETALIATION UNDER NYCHRL

90. Plaintiff incorporates and re-alleges by reference the allegations contained in paragraphs 1 through 89 as if fully set forth herein.

91. Under the NYCHRL it is unlawful discriminatory practice for an employer to retaliate or discriminate in any manner on the basis of an employee's complaints about unlawful discrimination or a hostile work environment. A prima facie case of retaliation under the NYCHRL is demonstrated when a party participated in a

Case 1:19-cv-10578-AJN-SDA  Document 1-6  Filed 11/14/19  Page 31 of 39

protected activity, the defendants knew about his participation, the defendants took an employment action that disadvantaged the plaintiff and there is a causal connection between the protected activity and the negative employment action.

92. In this case, Plaintiff advised his supervisors and Human Resources that he suffered from life-threatening allergies and a temporary disability in the event the allergies were triggered. Once Defendant became aware of Plaintiff's medical condition, Defendant harassed and retaliated against the Plaintiff by harassing the Plaintiff and terminating Plaintiff's employment despite Plaintiff's excellent work performance.

93. Also, in this case, Plaintiff was a victim of a falsified sexual harassment allegation. Once Defendant became aware of Plaintiff's sexual harassment allegation, Defendant harassed and retaliated against the Plaintiff on the basis of his gender, by harassing the Plaintiff and terminating Plaintiff's employment despite Plaintiff's excellent work performance. Defendants action violates Stop Sexual Harassment in NYC Act and/or title VII of Federal Civil Rights Act

94. Also, in this case, Plaintiff was a victim of a national origin-based harassment. Once Defendant became aware of Plaintiff's national origin harassment allegation, Defendant harassed and retaliated against the Plaintiff on the basis of his national origin and employment-based visa restriction, by harassing the Plaintiff and terminating Plaintiff's employment despite Plaintiff's excellent work performance.

95. Defendant's actions constitute unlawful retaliation for which the Plaintiff has suffered damages

96. As such, Plaintiff seeks damages on the Second Cause of Action including back pay, front pay, compensatory damages, punitive damages, pain and suffering, and

attorney's fee in an amount to be determined at trial, but in no event less than $1,000,000.00.

## AS FOR A THIRD CAUSE OF ACTION VIOLATIONS OF NYS HUMAN RIGHTS LAW

97. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 96 of the Complaint as if the fully set forth herein.

98. Defendant intentionally and/or negligently discriminated against the Plaintiff in violation of the NYSHRL, title VII of Federal Civil Rights Act and/or Americans with Disabilities Act (ADA), by singling out the Plaintiff and treating him differently from similarly situated employees who do not suffer from life-threatening allergies, by harassing the Plaintiff and by maintaining a pervasive atmosphere perpetuating discrimination and a hostile work environment.

99. Defendant intentionally and/or negligently discriminated against the Plaintiff in violation of the NYSHRL, title VII of Federal Civil Rights Act and/or Americans with Disabilities Act (ADA), by singling out the Plaintiff and treating him differently from similarly situated employees who did not experience gender-based discrimination and/or were not a victim of a falsified sexual harassment allegation, by harassing the Plaintiff and by maintaining a pervasive atmosphere perpetuating discrimination and a hostile work environment.

100. Defendant intentionally and/or negligently discriminated against the Plaintiff in violation of the NYSHRL, title VII of Federal Civil Rights Act and/or Americans with Disabilities Act (ADA), by singling out the Plaintiff and treating him differently from similarly situated employees who did not experience national-origin based

discrimination and/or were not restricted by visa sponsored employment restrictions, by harassing the Plaintiff and by maintaining a pervasive atmosphere perpetuating discrimination and a hostile work environment.

101.     As a result of the Defendant's violations of the NYSHRL, title VII of Federal Civil Rights Act and/or Americans with Disabilities Act (ADA), Plaintiff has lost pay and benefits and suffered substantial emotional distress, and pain and suffering. As such, Plaintiff seeks damages on the Third Cause of Action in an amount to be determined at trial, but in no event less than $1,000,000.00.

## AS FOR A FOURTH CAUSE OF ACTION
### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

102.     The Plaintiff repeats and re-alleges all allegations contained in paragraphs 1 through 101 as if fully set forth herein.

103.     Defendant engaged in, instigated, and directed a course of extreme and outrageous conduct with the intention of causing, or with reckless disregard of the probability of causing, emotional distress to Plaintiff

104.     Once Defendant became aware of Plaintiff's medical condition, sexual harassment allegation, and national-origin based employment visa restrictions harassment allegations, Defendant harassed and retaliated against the Plaintiff on the basis of his medical condition, gender and national-origin respectively by harassing the Plaintiff and terminating Plaintiff's employment despite Plaintiff's excellent work performance.

105.     Defendant's violations of the Federal Tort Claim Act, title VII of Federal Civil Rights

Act, or any other applicable laws under Federal Code, NYCHRL, NYSHRL or NYC Admin Code. As a proximate result of the Defendant's action, Plaintiff suffered severe or extreme emotional distress. As such, Plaintiff seeks damages on the Fourth Cause of Action in an amount to be determined at trial, but in no event less than $1,000,000.00.

## AS FOR A FIFTH CAUSE OF ACTION
### DEPRIVATION OF EMPLOYMENT RIGHTS, RECRUITMENT FRAUD AND ILLEGAL ACTIVITIES

106.  Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

107.  Upon information and belief: Defendants have intentionally, knowingly, and tortiously misappropriated Plaintiff's labors, required Plaintiff to labor for their benefit and maintained illegal control of Plaintiff, and prevented Plaintiff from engaging in employment outside of Defendants' direct or indirect illegal control. Defendants' actions violate 18 U. S. C. § 1589, title VII of Federal Civil Rights Act and/or Americans with Disabilities Act (ADA), and/or similarly applicable law/s under NYCHRL, NYSHRL or NYC Admin Code

108.  Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are

enjoined during the pendency of this action and thereafter.

## AS FOR A SIXTH CAUSE OF ACTION
## CONSPIRACY TO COMMIT CRIMES INVOLVING BODY INJURY

109.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

110.     Upon information and belief, Defendants intentionally, knowingly, and tortiously engaged in reckless operation of motor vehicles to threaten and intimidate Plaintiff while Plaintiff was walking, or operating a motor vehicle, while Plaintiff was in public spaces. Defendants' actions violate 18 U. S. C. § 1959, and/or similarly applicable law/s under NYCHRL, NYSHRL or NYC Admin Code

111.     Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

## AS FOR A SEVENTH CAUSE OF ACTION
## TAMPERING AND RETALIATION AGAINST WITNESSES, VICTIM, INFORMAT

112.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

113.     Upon information and belief, Defendants have intentionally, knowingly, and

tortiously tampered with plaintiff in their attempts to adversely influence Plaintiffs behavior and conduct, to maintain illegal control of Plaintiff, and to intimidate Plaintiff. Defendants' actions violate 18 U.S. C. § 1512, and/or similarly applicable law/s under NYCHRL, NYSHRL or NYC Admin Code

114.    Upon information and belief, Defendants have intentionally, knowingly, and tortiously retaliated against Plaintiff in their attempts to adversely influence Plaintiffs behavior and conduct, to maintain illegal control of Plaintiff, and to intimidate Plaintiff. Defendants' actions violate 18 U.S. C. § 1513, and/or similarly applicable law/s under NYCHRL, NYSHRL or NYC Admin Code

115.    Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

## AS FOR AN EIGHTH CAUSE OF ACTION
## DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

116.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

117.    Upon information and belief, Defendant has knowingly abused their power, positions, and resources for the purpose of perpetuating the abuse of Plaintiff and his rights, controlling activities of Plaintiff, willfully endangering Plaintiff health, well-being,

reputation, and harming his reputation, privacy, quality of life, and personal and economic prospects. Defendant actions violate 18 USC § 242, and/or similarly applicable law/s under NYCHRL, NYSHRL or NYC Admin Code

118.  Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

**WHEREFORE**, the Plaintiff demands judgment against Defendant in the amount set forth by a jury and for relief requested herein, back pay with prejudgment interest and all the fringe benefits to which he is entitled; pain and suffering, front pay and benefits; actual and punitive damages, and costs incurred because of the Defendant's unlawful behavior; including costs, disbursements, and attorney's fees to the extent permitted by law, and for such and other further relief that this Court deems just, proper and equitable.

Yours, etc.,

**Ashu Shukla**
_s_ashu shukla
*Plaintiff*
202 Salem CT, Apt#11
Princeton, NJ 08540
ashu.shukla@gmail.com
T # 917-488-6143

## **VERIFICATION**

On January 31st 2019, Hendrick Vandamme, plaintiff's prior attorney, duly admitted to practice in the Courts of the State of New York, affirmed statements 1-42 of the complaint to be true under the penalties of perjury, pursuant to CPLR 2016. He had read the complaint and knew the contents to be true except to the matters stated to be alleged on information and belief, and as to those matters, he believed them to be true. The source for this information and the ground for his belief were derived from the file maintained in the normal course of business for the plaintiff. Since his firm maintains an office in New York County and the plaintiff resides in a different county, the complaint was initially affirmed by Mr. Hendrick Vandamme.

On October 17th, 2019, Plaintiff affirms that statements 43-118 were added or modified by him, and are verified by him. He had read the complaint, and he believed the matters stated to be alleged in the above sections of the complaint to be true. The source for this information and the ground for his belief were derived from the facts and evidence file maintained in the normal course of business by the plaintiff. Part of the stated evidence was provided as exhibits on the leave of court motion that amended and verified this complaint.

Dated: New York, New York

October 17th, 2019

Yours, etc.,

**Ashu Shukla**
*_s_ashu shukla*
*Plaintiff*
202 Salem CT, Apt#11
Princeton, NJ 08540
ashu.shukla@gmail.com
T # 917-488-6143

Sworn to and subscribed
before me this
17 day Of OCt, 20 19

Dated: New York, New York

October 17rd, 2019

(oct|17|19)

ANITHA AMALRAJ
NOTARY PUBLIC OF NEW JERSEY
ID # 2439666
My Commission Expires 10/16/2023

Ashu Shukla

Plaintiff

/s/ ashu shukla