UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___6/15/2020___
```

Ashu Shukla,

                              Plaintiff,

               -against-

Deloitte Consulting LLP,

                              Defendant.

1:19-cv-10578 (AJN) (SDA)

OPINION AND ORDER

STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:

        Pending before the Court is a motion by Defendant, Deloitte Consulting LLP ("Deloitte" or "Defendant") to partially dismiss the First Amended Complaint of *pro se* Plaintiff Ashu Shukla ("Plaintiff" or "Shukla").[1] (Def.'s Not. of Mot., ECF No. 41.[2]) As part of the papers submitted by Plaintiff in opposition to Defendant's motion to dismiss, Plaintiff included as attachments a motion for leave file another amended pleading (Pl.'s 2/24/20 Not. of Mot., ECF No. 39-4) and a proposed Second Amended Complaint. (SAC, ECF No. 39-2.) Plaintiff also later submitted an "Addendum to Plaintiff's Second Amended Complaint" to correct certain grammatical errors (Addendum, ECF No. 44), as well as a letter in support of his opposition to Defendant's motion. (Pl.'s 3/4/20 Ltr., ECF No. 46.) The Court has considered the contents of all these documents in rendering its decision on Defendant's partial motion to dismiss.

---

[1] On February 14, 2020, District Judge Nathan approved the parties' written consent for me to enter a final order on the pending motion to dismiss, pursuant to 28 U.S.C. § 636(c). (Consent, ECF No. 37.)

[2] Defendant originally filed its motion and the supporting documents under a single docket entry at ECF No. 36, but subsequently refiled its various documents as separate docket entries at the direction of the Clerk of the Court. (*See* ECF Nos. 41-43; *see also* 3/2/20 Notice to Attorney.)

For the reasons set forth below, Plaintiff's motion to amend is GRANTED and the SAC, as amended by the Addendum, is the operative pleading in this case. In addition, Defendant's partial motion to dismiss is GRANTED IN PART and DENIED IN PART.

### FACTUAL ALLEGATIONS[3]

Shukla is a 34-year-old man of Indian national heritage who began working as a "Senior Consultant" in Deloitte's New York office in December 2016, under an H-1B visa. (SAC ¶¶ 14, 16, 80.) Shukla suffers from serious allergies, which cause anaphylactic reactions when triggered and for which he carries an EpiPen. (SAC ¶ 14, 20.)

### I.   December 14, 2017 Year-End Event And Aftermath

On December 14, 2017, Shuka attended a Deloitte year-end event. (SAC ¶ 19.) After drinking one and a half alcoholic beverages, Shukla suffered an anaphylactic reaction and began to lose consciousness. (*Id.*) Shukla vaguely remembered two Deloitte partners carrying him to a hotel room. (*Id.*) The next morning, Shukla contacted one of the partners, Michael Fernandez, by email and telephone. (SAC ¶¶ 20, 43.) When they spoke by telephone, Fernandez asked if Shukla was okay, mentioning that Shukla had thrown up in the hotel room several times and refused help. (SAC ¶ 43.) Shukla apologized and told Fernandez about his medical condition and that he was deeply embarrassed, though he did not remember the events clearly. (*Id*.) The same day, Fernandez reported the incident to Deloitte's internal human resources department ("HR"). (SAC ¶ 44.)

---

[3] For purposes of Defendant's partial motion to dismiss, the Court assumes that the well-pleaded allegations of the FAC and SAC are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (when "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

Three days later, on December 18, 2017, Shukla was advised that he would no longer be sent to work on a JP Morgan project in the United Kingdom that he previously had been advised he would be sent to. (SAC ¶¶ 21, 45.) The project leader, Christina Young, told Shukla that she was getting "pressure from above" not to put him on the project. (SAC ¶ 21.) Instead, Shukla was sent to interview for projects for which he lacked relevant experience. (SAC ¶ 22.)

Following the December incident, Shukla alleges that various supervisors mocked him for not being able to drink alcohol and threatened to send him to projects in North Korea and Syria as punishment. (SAC ¶¶ 23, 24.) He also alleges that his supervisors forced him to drink alcohol on at least one occasion, which he reported to Deloitte Manager, Manoj Kumar. (Id. ¶ 27.)

## II.    January 10, 2018 Holiday Event And Young's Complaint to HR

On January 10, 2018, Shukla bumped into Young at a holiday event and the two engaged in amicable conversation. (SAC ¶ 47.) The next morning, on January 11, 2018, Shukla emailed Young, copying his resource manager, Amye Hanes, regarding visa and airplane ticket expenses he incurred in preparation for the JP Morgan project. (SAC ¶ 48.) Young accused Shukla of purchasing the airline ticket without her approval and Hanes indicated that she needed to escalate the issue to a partner. (SAC ¶¶ 21, 48.) Later that afternoon, unbeknownst to Shukla, Young filed a sexual harassment complaint with HR, alleging that Shukla was "drunk and inadvertently touch[ed] her backside at a holiday party." [4] (SAC ¶¶ 49, 51.) On January 12, 2018, Hanes directed the Mergers and Acquisitions ("M&A") team to remove Shukla from an internal project he had been working on since January. (SAC ¶ 56.)

---

[4] Shukla alleges that Young first reported that this incident occurred at the January 10, 2018 party, but later, after Shukla produced witnesses to prove that he was sober at the January party, changed her story to say that the incident occurred at the December 14, 2017 event. (SAC ¶ 53.)

### III.   Shukla's February 2018 Complaint To HR

In early February 2018, after participating in a firm-wide ethics, integrity and compliance training, Shukla filed a complaint with HR alleging misbehavior by his project leadership during a Fall 2017 project in Los Angeles. (SAC ¶ 29.) Shukla reported that "though it was his duty to point out instances where projects were mismanaged and to suggest improvements . . . he was threatened against raising such issues with supervisors in higher positions and learned it would 'obviously result in a bad rating'" (the "February 2018 HR Complaint"). (*Id*.) Shukla also alleged that he was treated unprofessionally and ultimately was "removed from the project by his immediate supervisors." (*Id*.) Shukla further alleged that members of the HR team later falsified his complaint and wrongly stated that he wanted to rescind it. (SAC ¶ 72.)

### IV.   February 16, 2018 Meeting With HR

On February 16, 2018, Shukla participated in a discussion with two members of HR. (SAC ¶¶ 30-31, 60.) Shukla attempted to discuss his February 2018 HR Complaint, but instead HR asked Shukla to sign a letter of reprimand for being "inebriated" at two different firm events or face termination. (SAC ¶¶ 30-31.) Shukla reported his medical condition to HR and, rather than sign the letter, produced witnesses to confirm that he did not drink alcohol at the second firm event on January 10, 2018. (SAC ¶¶ 32, 60.)

### V.   March 2016 Through October 2018 Work Environment

On March 6, 2018, Shukla was released from a 21st Century Fox Channel project, two weeks after being assigned to it, and was replaced by a purported "subject matter expert," who was in fact a Caucasian "fresh college graduate with close to 1.5 years of experience." (SAC ¶ 34, 83.) Shukla alleges that his release was planned by Deloitte Human Resource Manager Joanna

Rohde, who was "working behind the scenes in the process leading to and following" the sexual harassment allegations by Young and Shukla's February 2018 HR Complaint. (SAC ¶ 83.)

On or about May 30, 2018, a senior manager, Kartik Nagaraja ("Nagaraja"), told Shukla that "as an Indian national post termination, [Shukla] would have less than two months to find another job or leave the country." (SAC ¶ 35.) Nagaraja tried to remove Shukla from a project after the client complained that he had no idea what Shukla was doing. (SAC ¶ 76.) Shukla confronted the client, who claimed to have been mistaken and gave him positive feedback. (SAC ¶ 78.) Shortly thereafter, Shukla voluntarily left Nagaraja's project. (*Id*.) Nagaraja subsequently gave Shukla a poor performance review. (SAC ¶ 78.)

During a June 8, 2018 performance review, Shukla's female "counsellor," citing an email from HR, stated that Shukla had not received any positive reviews, that no one liked working with him and that he would be given a bad rating. (SAC ¶¶ 36, 65.)

In August 2018, a senior manager on the Ball Corporation project on which Shukla had been working called Shukla to mock him about his lack of bonus and to suggest that Shukla would be removed from the project. (SAC ¶ 25.) A few days later, Shukla was released from that project by Senior Manager Brian Zhong. (SAC ¶¶ 38, 81.) Shukla alleges that Zhong "acted with hostility towards [him] . . . claiming that he observed 'gaps and empty spaces'" and a "deterioration" in Shukla's work product. (SAC ¶ 38.) Shukla contests these complaints and claims that he was released after complaining about Nagaraja's bad performance review. (SAC ¶ 79.)

On October 12, 2018, HR noted that Shukla had been rolled off the Ball Corporation project due to performance problems and was staffed "in a more strategy focused role" with Kaiser Permanente, but that he still was experiencing the same performance issues. (SAC ¶ 64.)

Shukla ultimately was released from the Kaiser Permanente project on October 17, 2018, and was called "deplorable" by a Senior Manager, Tim Van Ee ("Van Ee"). (SAC ¶¶ 81, 84.) The following day, Van Ee referred to Shukla as an "expendable Indian," but later apologized (*Id*. ¶ 85.) Shukla was replaced on the Kaiser Permanente project by a Caucasian woman. (*Id* ¶ 86.)

## VI.   <u>November 2018 Termination And Aftermath</u>

Shukla was terminated by Deloitte on November 5, 2018. (SAC ¶ 40.) Following his termination, he applied to jobs though Deloitte's "Marketplace" website. (SAC ¶ 93.) Despite interviewing at Teva Pharmaceuticals, indeed.com and wayfair.com, Shukla was not hired. (SAC ¶¶ 94, 96.) Shukla was not chosen for any other job to which he applied through the Deloitte Marketplace. (SAC ¶ 101.) Despite applying to various companies since his termination, Shukla has failed to secure employment. (SAC ¶¶ 102-04.)

<u>PROCEDURAL HISTORY</u>

Plaintiff initially filed this action, through counsel, on February 1, 2019 in New York state court.[5] After terminating his counsel, Plaintiff, proceeding *pro se*, amended his state complaint several times, eventually adding claims that arose under federal law.

On August 30, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (SAC Ex. B, ECF No. 39-3, at 5.) In the EEOC Charge, Plaintiff alleges that Defendant "discriminated against [him] on the basis of [his] medical condition/ disability, national origin and/or ethnicity and sex." (*Id*.) On September 5, 2019, the EEOC issued, at Plaintiff's request, a Notice of Right to Sue. (*Id*. at 2.)

---

[5] The full procedural history of this action in New York state court is set forth in this Court's February 27, 2020 Opinion and Order denying Plaintiff's motion to remand. *See Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578, 2020 WL 949426 (S.D.N.Y. Feb. 27, 2020).

On November 14, 2019, Defendant removed the state court action to this Court. On December 4, 2019, Plaintiff filed a motion for leave to file a First Amended Complaint ("FAC"),[6] which the Court granted on consent on January 8, 2020. (Order, ECF No. 25.) The FAC purported to assert claims, *inter alia*, for disability, gender and national origin discrimination; retaliation; intentional infliction of emotional distress ("IIED"); negligent infliction of emotional distress ("NIED"); and violations of various federal statutes. (FAC ¶¶ 89-122.)

On February 10, 2020, Defendant filed its partial motion to dismiss (which it re-filed on March 2, 2020 to correct a filing error). (*See* ECF Nos. 41-43.) Defendant's motion, which was addressed to the FAC, sought to dismiss all of Plaintiff's claims, except for Plaintiff's disability discrimination claims. (Def's Mem., ECF No. 42.) On February 24, 2020, Plaintiff opposed Defendant's motion (*see* Pl.'s Mem., ECF No. 39) and filed a proposed SAC. (*See* SAC, ECF No. 39-2.) The SAC purports to assert twenty causes of action. (SAC ¶¶ 135-228.) In its reply memorandum in support of the partial motion to dismiss, Defendant addressed these additional claims and seeks to dismiss Counts Three through Twenty of the SAC.[7] (Def's Reply, ECF No. 45, at 10.)

## MOTION TO DISMISS LEGAL STANDARDS

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff

---

[6] The FAC was Plaintiff's fourth amendment, since the pleading that Defendant removed to this Court from state court was Plaintiff's Third Amended Complaint. (*See* Not. Removal Ex. F, ECF No. 1-6.) The FAC is filed at pages 12 to 57 of ECF No. 14.

[7] When a complaint is amended after a defendant has filed a motion to dismiss a court may evaluate the motion in light of the allegations in the amended complaint. *See Pettaway v. Nat'l Recovery Sols.*, LLC, 955 F.3d 299, 303-04 (2d Cir. 2020) ("This is a sound approach that promotes judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient.").

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Complaints filed by *pro se* litigants "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)). Nevertheless, a *pro se* plaintiff "must still plead enough facts to state a claim to relief that is plausible on its face." *Owens v. City of New York*, No. 14-CV-00966 KBF, 2015 WL 715841, at *1 (S.D.N.Y. Feb. 19, 2015) (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Moreover, *pro se* Plaintiffs "cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.   Discrimination Claims Under Title VII, The NYSHRL And Section 1981

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

origin."[8] 42 U.S.C. § 2000e-2(a)(1). "Title VII thus requires a plaintiff asserting a discrimination

claim to allege two elements: (1) the employer discriminated against him (2) because of his race,

color, religion, sex, or national origin." V*ega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85

(2d Cir. 2015).[9] Here, Plaintiff has alleged race, sex and national origin discrimination based on

adverse employment action and harassment in the form of hostile work environment, each of

which is discussed below.

### A.    Plaintiff's Claims Based On Adverse Employment Action

To state a claim based on adverse employment action, "a plaintiff must plausibly allege

that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or

national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86. A

plaintiff sustains an adverse employment action if he "endures a materially adverse change in

the terms and conditions of employment." *Id.* at 85. "An adverse employment action is one which

is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal

citation and quotation marks omitted). "Examples of materially adverse changes include

termination of employment, a demotion evidenced by a decrease in wage or salary, a less

---

[8] "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003) (citations omitted). However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Id*. Defendant argues in its reply memorandum that Plaintiff failed to exhaust his administrative remedies regarding his race discrimination claim because he did not raise it before the EEOC. (Reply at 3.) However, in his EEOC charge, Plaintiff alleges that he was discriminated against based upon his ethnicity (see SAC, Ex. B, at 5), and "discrimination based on ethnicity . . . constitutes racial discrimination under Title VII." *Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016). Thus, the Court finds that Plaintiff has exhausted his administrative remedies.

[9] The same standard applies to claims pursuant to the NYSHRL and Section 1981. *See Littlejohn v. City of New York*, 795 F.3d 297, 312, 320-21 (2d Cir. 2015). Thus, the Court considers these claims in tandem.

distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* at 84.

A "plaintiff can meet his burden of pleading that [an] adverse employment decision was motivated at least in part by an impermissible reason 'through direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination.'" *Colbert v. FSA Store, Inc.*, No. 19-CV-09828 (LJL), 2020 WL 1989404, at *2-3 (S.D.N.Y. Apr. 27, 2020) (quoting *Vega*, 801 F.3d at 87). "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312. At the motion to dismiss stage, the evidence necessary to satisfy the plaintiff's burden is "minimal." *Id.* at 313. (quoting *Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d 376, 381 (2d Cir.2001)).

Plaintiff's claims appear to be premised on the following alleged adverse employment actions: (1) removal from certain projects; (2) negative feedback and performance reviews; (3) denial of a pay raise, bonus and training opportunities; and (4) termination. (SAC ¶¶ 51-59, 62-64, 66-73, 147-54, 159-67.) For the reasons set forth below, the Court finds that Plaintiff has not plausibly alleged a material change in the terms and conditions of his employment, other than his termination. In any event, the Court finds that Plaintiff has not plausibly alleged that discrimination was a motivating factor in Defendant's actions.

Shukla alleges that he was removed from various projects because of discrimination. (SAC ¶ 66, 81.) Changes in job duties or work assignments, such as the changes in project assignments at issue here, typically do not rise to the level of an adverse employment action, unless such changes result "in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Seitz v. New York State*, No. 18-CV-04149 (PKC) (LB), 2019 WL 4805257, at *17 (E.D.N.Y. Sept. 30, 2019) (internal quotation omitted); *see also* N*ovak v. Waterfront Comm'n of New York Harbor*, 928 F. Supp. 2d 723, 731 (S.D.N.Y. 2013) (unfavorable work assignment not material adverse action). Here, Plaintiff alleges that his removal from these projects "forestalled his professional and career growth." (*See*, *e.g.*, SAC ¶¶ 56, 57.) However, even assuming that is enough to constitute an adverse employment action, as set forth below, Shukla does not plausibly allege that his gender was a motivating factor in the removal decisions.

Shukla also asserts that he was denied a bonus and pay increase because of his gender and national origin. (*See*, *e.g.*, SAC ¶¶ 62, 63.) "Failing to increase an employee's compensation can be an adverse employment action if the increase was customary, expected, [and] warranted, such that it could reasonably be considered part of the terms and conditions of employment." *Gupta v. Al Jazeera Am., LLC*, No. 16-CV-02980 (VEC), 2018 WL 1605571, at *8 (S.D.N.Y. Mar. 29, 2018) (internal quotations and alterations omitted); *see also Boyar v. City of New York*, No. 10-CV-00065 (HB), 2010 WL 4345737, at *3 (S.D.N.Y. Oct. 28, 2010). However, "the Second Circuit has warned that discretion over raises and bonuses does not insulate an employer from the anti-discrimination laws." *Gupta*, 2018 WL 1605571, at *9 (citing *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235-36 (2d Cir. 2015) ("The fact that the employer has discretion [over] whether to grant bonuses or raises does not support the conclusion that an employer may freely allocate

them on the basis of racial or religious bias, or disability discrimination."). The Court finds that Plaintiff's statements that he was denied a salary increase and a bonus, without any additional facts regarding whether the bonus or pay increase were customary, expected or warranted, are insufficient to plausibly allege a material change in the terms and conditions of his employment.

Shukla's contentions that he received negative feedback and performance reviews and was denied training opportunities (*see*, *e.g.*, SAC ¶¶ 62, 63) similarly fail to allege a material change in his employment. "A negative performance review, without more, does not constitute an adverse employment action." *Atkins v. Rochester City Sch. Dist.*, 764 F. App'x 117, 119 (2d Cir. 2019) *see also Smith v. New York City Dep't of Educ.*, No. 18-CV-08545 (PGG), 2019 WL 6307471, at *8 (S.D.N.Y. Nov. 25, 2019) (citing cases). Shukla has not alleged that his negative feedback and reviews resulted in any material change in his employment apart from his eventual termination. Moreover, "[t]o successfully establish denial of training opportunities as an adverse employment action, a plaintiff must demonstrate that the employer offered training to other employees and that he was denied training under circumstances giving rise to an inference of discrimination." *Nidzon v. Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 349 (S.D.N.Y. 2010) (internal citation omitted). Shukla has not identified the training that he was denied or the circumstances surrounding such denial to plausibly allege a material change in the terms and conditions of his employment on that basis. Thus, the Court does not consider these alleged actions as separate adverse employment actions.[10]

---

[10] The Court recognizes that Shukla's other allegations of discrimination, even if they do not independently constitute adverse employment actions, may "provide relevant background evidence by shedding light on Defendant's motivation and thus bolster his claim that Defendants treated him differently because of [a protected characteristic]." *Vega*, 801 F.3d at 88 (internal quotation marks and citation omitted).

Finally, Shukla alleges that he was terminated based on gender, race and/or national origin. (*See*, *e.g.*, SAC ¶¶ 6, 79.) There is no doubt that termination of employment constitutes an adverse employment action. *See Glascoe v. Solomon*, No. 18-CV-08284 (AT), 2020 WL 1272120, at *8 (S.D.N.Y. Mar. 17, 2020). However, the Court finds that Plaintiff's adverse action claims fail for the separate reason that he has not met his minimal burden to plead facts that would give rise to a plausible inference of discrimination.

### 1.   <u>Discrimination Based On Gender</u>

Plaintiff repeatedly alleges that he was "treated differently than others outside his protected class" (*see, e.g.*, SAC ¶¶ 152-53), but he does not identify any female employee with whom he was "similarly situated in all material respects" as is necessary to create an inference of discrimination. *Farsetta v. Dep't of Veterans Affairs*, No. 16-CV-06124 (DLC), 2017 WL 3669561, at *5 (S.D.N.Y. Aug. 24, 2017) (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)). The only purported comparator that Plaintiff references is that he was replaced on the Kaiser Permanente project with "a Caucasian woman." (SAC ¶ 86.) However, "[n]umerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, *e.g.*, who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiffs' or how they were treated differently by defendants." *Blige v. City Univ. of New York*, No. 15-CV-08873 (GBD) (KHP), 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017), *report and recommendation adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017); *see also Vega*, 801 F.3d at 86 (while "detailed factual allegations [regarding comparators] are not required, a formulaic recitation does not suffice").

To the extent that Plaintiff contends that he was treated differently than other individuals who did not have a sexual harassment complaint against them (*see, e.g.*, SAC ¶¶ 38, 55, 63, 66, 68-70), any disparate treatment on that basis does not give rise to an inference of gender discrimination because it is not based on a protected characteristic. *See Patane v. Clark,* 508 F.3d 106, 112 (2d Cir. 2007) ("The *sine qua non* of a gender-based discriminatory action claim under Title VII is that the discrimination must be *because of* sex.") (emphasis in original); *see also Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic").[11]

Plaintiff also appears to assert that various notes in his HR file, which he contends are incorrect and/or intentionally false, and thus give rise to an inference of discrimination based on gender. (SAC ¶¶ 57, 59, 61-64.) However, even assuming these notes impacted Shukla's termination, or any other adverse employment action, they do not give rise to an inference of discrimination based on gender. Similarly, Shukla alleges that various other negative actions taken by female employees give rise to an inference of discrimination based on gender. (*See, e.g.*, SAC ¶¶ 65-66, 69-71, 73.) However, the fact that these actions were taken by an employee of the opposite sex does not give rise to an inference of discrimination. As noted earlier, claims under Title VII arise where adverse actions are taken against an employee "*because* of an employee's

---

[11] To the extent that Shukla is attempting to raise an inference of discrimination based on Defendant's handling of the allegations against him (*see* SAC ¶¶ 58, 60), which under certain circumstances could support a *prima facie* case of sex discrimination, *see Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019) (citing *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016)), any such claim fails because Shukla does not allege that he was terminated, or suffered any other adverse action, in response to the sexual harassment allegations.

sex, or other protected characteristic," *Brown*, 257 F.3d at 252 (2d Cir. 2001) (emphasis added),

not because of the sex of the person taking the adverse actions.

### 2.      Discrimination Based On Race And National Origin

With respect to race and national origin, Shukla points to certain comments that he

contends show discriminatory motivation for the alleged adverse employment actions. First,

Shukla alleges that Nagaraja, a senior manager, told him on May 30, 2018 that "as an Indian

national post termination, the Plaintiff would have less than two months to find another job or

leave the country." (SAC ¶ 35.) Second, Shukla alleges that another senior manager, Van Ee called

Shukla "deplorable" and an "expendable Indian"[12] after releasing him from a project in mid-

October 2018. (SAC ¶¶ 84, 85.)

"Discriminatory comments may be indicative of intent, but only where the remarks have

a causal nexus to the termination decision." *Osuan v. City of New York*, No. 18-CV-00151, 2019

WL 2544866, at *2 (S.D.N.Y. June 20, 2019) (internal citation omitted). Courts in this Circuit

consider the following four factors to determine "whether a remark is probative" of

discriminatory intent: (1) who made the remark (*i.e.*, a decision-maker, a supervisor, or a low-

level co-worker); (2) when the remark was made in relation to the employment decision at issue;

(3) the content of the remark (*i.e.*, whether a reasonable juror could view the remark as

discriminatory); and (4) the context in which the remark was made (*i.e.*, whether it was related

---

[12] This remark is suggestive of both race and national origin and thus potentially could support both a national origin discrimination claim and a race discrimination claim. The EEOC "defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1. Moreover, as noted earlier, discrimination based on ethnicity constitutes racial discrimination under Title VII. See *Vill. of Freeport*, 814 F.3d at 607.

15

to the decision-making process). *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010) (collecting cases); *see also Osuan*, 2019 WL 2544866, at *2 (considering factors in deciding motion to dismiss).

Considering these factors, the Court finds that Nagaraja's remark that "as an Indian national post termination, the Plaintiff would have less than two months to find another job or leave the country" (SAC ¶ 35) is not evidence of discriminatory intent based on race or national origin. The content of the remark is not degrading or invidious. Indeed, several times in the SAC, Shukla himself states that, due to his visa requirements, he was subject to this condition. (SAC ¶ 93.) In addition, this statement, was made five months before Shukla's eventual termination, and the only connection Shukla alleges to his termination is that several months after he stopped working on a project with Nagaraja, Nagaraja gave him a bad performance review, which ultimately contributed to his termination.[13] (SAC ¶¶ 78-79.) Thus, the Court finds that this remark is not enough to support Shukla's discrimination claims based on national origin. *See De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 413 (2d Cir. 2014) (a "comment, being so far removed in time and with such a tangential relationship to the Plaintiff's ultimate discharge, can be characterized as a 'stray remark' which does not constitute sufficient evidence to state a case for employment discrimination"); *see also Brady v. Calyon Sec. (USA)*, No. 05-CV-03470 (GEL), 2007 WL 4440926, at *14 (S.D.N.Y. Dec. 17, 2007) ("[S]uch isolated remarks alone are not enough to

---

[13] While Shukla alleges that Nagaraja "tried to plot" his release from a project (SAC ¶ 76), he does not assert that he was removed by Nagaraja, but instead states that he got himself staffed in another role. (*Id*. ¶ 78.) Thus, Shukla has not alleged an adverse employment action on that basis. Similarly, he has not alleged that Nagaraja's negative performance review resulted in any material change in his employment.

support a discrimination claim, especially where such comments are not even facially malicious or derogatory, but more likely just benign off-hand remarks.").

Van Ee's remark that Plaintiff was an "expendable Indian" clearly implicated Shukla's national origin and was close in time to his termination. However, Plaintiff does not allege that Van Ee was involved in the decision to terminate him. Plaintiff alleges that Van Ee "was instructed by someone higher up to intentionally use these words to cause racial degradation and significant emotional distress to [Plaintiff]," but this still does not assert any connection with his termination.[14] "Even statements that are clearly racist, ageist, and religiously inappropriate are not discriminatory when they are stray remarks not connected to the adverse employment decision." *Gautam v. Prudential Fin., Inc.*, No. 06-CV-03614 (JS) (AKT), 2008 WL 11417411, at *7 (E.D.N.Y. Sept. 3, 2008). Because the SAC "does not allege that the remarks were 'related to the decision-making process' resulting in Plaintiff's termination," the court finds that Shukla has not stated a viable claim for national origin discrimination. *See Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015).

Shukla also alleges that he was replaced on one project with a Caucasian woman, which he contends is evidence of disparate treatment based on national origin. (SAC ¶ 83.) However, as with his disparate treatment claim based on gender (*see* Discussion Section I.A.1., *supra*), Shukla has not alleged any details regarding the purported comparator. *See Blige v. City Univ. of New York*, 2017 WL 498580, at *9.

---

[14] The Court separately addresses these allegations in the context of Plaintiff's hostile work environment and retaliation claims in Discussion Section I.B., *infra*.

For these reasons, the Court dismisses Plaintiff's gender, race and national origin discrimination claims under Title VII, Section 1981 and the NYSHRL based on an adverse employment action.

**B.     Hostile Work Environment**

"An employer violates Title VII when the 'workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . so long as there is a basis for imputing the conduct that created the hostile environment to the employer." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 387 (2d Cir. 2020).[15] "To analyze whether a plaintiff meets this burden, a district court considers the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." *Id.* (internal citation and quotation marks omitted). "This test has both 'objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must also subjectively perceive that environment to be abusive.'" *Id.* (citation omitted).

"Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that [he] was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for

---

[15] The standard for a hostile work environment claim under Title VII, Section 1981 and the NYSHRL is the same. *See Sanderson v. Leg Apparel*, No. 19-CV-08423 (GHW), 2020 WL 3100256, at *9 (S.D.N.Y. June 11, 2020) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013)). The same standard also is applied to hostile work environment claims under the ADA. *See Zabar v. New York City Dep't of Educ.*, No. 18-CV-06657 (PGG), 2020 WL 2423450, at *5 (S.D.N.Y. May 12, 2020).

the worse, and the Second Circuit has repeatedly cautioned against setting the bar too high in this context." *Patane*, 508 F.3d at 113 (internal citation, quotation marks and alterations omitted). A plaintiff also must show that the hostile environment was due to the protected class to which he belongs. *See Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999); *see also Vega v. Dep't of Educ.*, No. 18-CV-06221 (ER), 2020 WL 1505564, at *10 (S.D.N.Y. Mar. 30, 2020).

Shukla alleges that he was subject to hostile work environment based on allegations that certain HR employees orchestrated false sexual harassment allegations against him; female employees made disparaging remarks about him, sent him emails from fake names like Buttram, Buttarazzi and others related to the sexual harassment allegations; gave him poor performance reviews, removed him from projects or prevent him from being staffed on projects; mocked him based on disability and visa limitations.[16] (SAC ¶¶ 43-49, 55, 65, 68, 74, 175-76, 184.)

The Court need not decide whether this conduct, assumed to be true, rises to the level of a hostile work environment because, aside from his own speculation, Plaintiff has not alleged that any of the purportedly harassing or hostile acts were based upon his gender, disability, race and/or national origin, which is fatal to his claims. *See O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-08502 (KMK), 2020 WL 1244474, at *14 (S.D.N.Y. Mar. 16, 2020); *Guzman v. City of New York*, No. 13-CV-05445 (GHW), 2015 WL 1239988, at *12 (S.D.N.Y. 2015) (dismissing plaintiff's Title VII hostile work environment claims because plaintiff failed to demonstrate that defendants' alleged hostile conduct was predicated on plaintiff's "color, race,

---

[16] Shukla also asserts various claims that Deloitte was involved in hacking and/or surveilling his electronic devices; coordinating with Washington D.C. traffic police to give him a parking ticket; and harassing him while driving in Colorado. (SAC ¶¶ 117-19, 123, 124.)

gender, or pregnancy status" (citation omitted)). "[A]s the Supreme Court explained, Title VII does not bar all workplace harassment[,] only harassment that occurs because of the harassment target's lawfully protected characteristic(s)." *Akinsanya v. New York City Health & Hosps. Corp.*, No. 16-CV-03332, 2017 WL 4049246, at *7 (S.D.N.Y. July 28, 2017), *report and recommendation adopted*, 2017 WL 4023138 (S.D.N.Y. Sept. 12, 2017) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-80 (1998)).

Thus, Plaintiff's hostile work environment claims under Title VII, Section 1981 and the NYSHRL based upon his gender, disability, race and national origin are dismissed.

## II.   <u>Discrimination Claims Under The NYCHRL</u>

The NYCHRL forbids "an employer or an employee or agent thereof, because of the actual or perceived . . . race, . . . national origin, gender, [or] disability . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code, § 8-107(1)(a)(3). Claims under the NYCHRL must be analyzed "separately and independently from any federal and state law claims" and construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal citations and quotations omitted). To state a claim for discrimination under the NYCHRL, a plaintiff need only show that he was treated "less well" at least in part because of his protected status. *Mihalik*, 715 F.3d at 110. Thus, "[u]nder the NYCHRL, [ ] unlike under Title VII and the NYSHRL, there is no distinction between a claim premised on the creation of a hostile work environment (a species of harassment claim) and one premised on unlawful discrimination[.]" *Rothbein v. City of New York*, No. 18-CV-05106 (VEC), 2019 WL 977878, at *9 (S.D.N.Y. Feb. 28, 2019) (citing cases).

"Instead, a focus on unequal treatment based on gender [or another protected class]—regardless of whether the conduct is 'tangible' (like hiring or firing) or not—is in fact the approach that is most faithful to the uniquely broad and remedial purposes of the [NYCHRL]." *Mihalik*, 715 F.3d at 114 (quoting *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 79 (1st Dep't 2009)).

As with Shukla's claims under federal and state law, the Court finds that he has not plausibly alleged that he was treated less well based upon his gender. *See Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-CV-06034 (JPO), 2019 WL 6916099, at *6 (S.D.N.Y. Dec. 19, 2019) (dismissing NYCHRL claims where plaintiff's allegations did not rise above a "speculative level"). Thus, Plaintiff's NYCHRL claim based on gender is dismissed.

However, with respect to his claim based on race and national origin, Shukla alleges that he was called an "expendable Indian" by a Deloitte senior manager at a time when Plaintiff was being removed from a project. (SAC ¶ 85.) This allegation is enough to support a plausible claim that Plaintiff was treated less well due to his race and/or national origin. *See Mihalik*, 715 F.3d at 113 (under NYCHRL, "even a single comment may be actionable in the proper context") (citations omitted).

## III.  Retaliation Claims

### A.  Title VII, Section 1981 And The ADA

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "Thus, for a retaliation claim to survive a motion for

judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (citing *id*.).[17]

"[I]n the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id*. (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII . . . and is not limited to discriminatory actions that affect the terms and conditions of employment." *Id*. (citing *Burlington*, 548 U.S. at 64.)

A plaintiff has engaged in a protected activity if he "personally complains or is critical about the discriminatory employment practices of [his] employer." *Littlejohn*, 795 F.3d at 318 (internal quotation marks and alterations omitted). "As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e-3(a). "Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id*. (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 361 (2013). "It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Id.* at 90-91 (citation omitted). "'[B]ut-for' causation does not[, however,] require proof that retaliation was the only cause of

---

[17] Retaliation claims under Title VII and the ADA "are analyzed under the same framework." *Salas v. New York City Dep't of Investigation*, 298 F. Supp. 3d 676, 685 (S.D.N.Y. 2018). The same standard also is applied to retaliation claims under Section 1981. *See Sosa v. New York City Dep't of Educ.*, No. 18-CV-00411(PKC) (SJB), 2020 WL 1536348, at *4 (E.D.N.Y. Mar. 31, 2020).

the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id*. at 91 (citing *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir.2013)). Further, "the but-for causation standard does not alter the plaintiff's ability to demonstrate causation . . . through temporal proximity." *Id.* (citation omitted); *see also id.* at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action.").

Shukla alleges that he "complained to his employer about what he felt was discrimination based on his medical condition/disability" and that he thereafter was removed from projects and terminated in retaliation. (SAC ¶¶ 192, 194-95.) However, Shukla does not allege any facts regarding the circumstances of such a complaint, including when it was made, to put Deloitte on notice of his claim, and does not allege any facts from which it may be inferred that Deloitte acted with a retaliatory motive.  *See Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (finding that complaint's "bald assertions of . . . retaliation, unsupported by any comments, actions, or examples . . . from which [the court] could infer that the defendants possess[ed] a . . . retaliatory motive, [were] implausible and insufficient to survive a motion to dismiss").

To the extent Shukla alleges that his complaint about Nagaraja's negative performance review resulted in his removal from the Ball Corporation project (SAC ¶ 79), he cannot state a claim for retaliation because the conduct he complained of was not discriminatory. A retaliation claim lies only where the practices complained of are discriminatory. *See Littlejohn*, 795 F.3d at 318.

Shukla also alleges that he "logged a complaint to his employer about what he felt was discrimination based on unethical behavior by his supervisors." (SAC ¶ 193.) This allegation

appears to be based upon Plaintiff's reporting in February 2018 of "observed misbehavior" to HR, which he explains were "instances where projects were mismanaged." (*See id*. ¶ 29.) Because this complaint related to project mismanagement and not discrimination, it is not a protected activity that can support a retaliation claim. *See Int'l Healthcare Exh., Inc. v. Global Healthcare Exch*., LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity.").

Because Plaintiff has not plausibly alleged any protected activity, his retaliation claims under federal law are dismissed.

> **B.   The NYSHRL And The NYCHRL**

To establish a prima facie case of retaliation under the NYSHRL, a plaintiff must establish: (1) that he participated in an activity protected by the NYSHRL, (2) that his participation was known to his employer, (3) that his employer thereafter subjected him to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action. *See Benzinger v. Lukoil Pan Americas LLC & Litasco S.A*., No. 16-CV-08533 (PAE), 2020 WL 1322478, at *15 (S.D.N.Y. Mar. 20, 2020) (citing *Kaytor v. Elec. Boat Corp*., 609 F.3d 537, 552 (2d Cir. 2010)). "The burden of proof at the *prima facie* stage has been characterized as *de minimis*." *Id*. (internal citation and quotation marks omitted).

"The NYCHRL imposes an identical standard to that of the NYSHRL, except that the plaintiff need not prove any adverse employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Benzinger*, 2020 WL 1322478, at *20 (internal citation, quotation marks and alterations omitted). Under the NYCHRL, the protected activity need only have been "a motivating factor" in the

adverse action. *Ottoson v. SMBC Leasing & Fin., Inc.*, No. 13-CV-01521 (JPO), 2020 WL 881992, at *5 (S.D.N.Y. Feb. 24, 2020) (citing *Mihalik*, 715 F.3d at 115).

As with Plaintiff's federal claims, he has not alleged any protected activity as a basis for retaliation under the NYSHRL or NYCHRL. *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 251 (E.D.N.Y. 2015) ("Without an allegation of protected activity, Plaintiffs have not stated a claim for retaliation."). Thus, his retaliation claims under the NYSHRL and NYCHRL are dismissed.

## IV.    State Law Claims

### A.    IIED And NIED Claims

To state a claim for IIED under New York law,[18] a plaintiff must allege "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Chau v. Donovan*, 357 F. Supp. 3d 276, 290 (S.D.N.Y. 2019) (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)); *see also Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350 (1993). "New York courts have imposed a very high threshold for intentional infliction of emotional distress claims, requiring that the conduct must be so outrageous and extreme 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Campoverde v. Sony Pictures Entm't*, No. 01-CV-07775 (LAP), 2002 WL 31163804, at *11 (S.D.N.Y. Sept. 30, 2002) (quoting *Murphy v. Am. Home Prod. Corp.*, 58 N.Y.2d 293, 303 (1983)).

---

[18] Although Plaintiff purports to assert claims of IIED and NIED under various federal and state statutes (*see* SAC ¶¶ 200-10), these claims are common law torts which do not arise under these statutes.

To state claim for NIED under New York law, a plaintiff must show: "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Truman v. Brown*, No. 19-CV-01546 (PAE), 2020 WL 353615, at *15 (S.D.N.Y. Jan. 21, 2020) (citation omitted). "As to the first element, New York courts use the same standard in evaluating extreme and outrageous conduct in both IIED and NIED claims." *Id*. (citing *Dillon v. City of New York*, 261 A.D.2d 34 (1st Dep't 1999). In addition to these three elements, a plaintiff must plead "facts making out one of three "theories": (1) a bystander theory, (2) a direct duty theory, or (3) a special circumstances theory." *Id*. (citing *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)). The bystander theory requires a plaintiff to allege that he was threatened with physical harm, while a direct duty theory requires allegations that a plaintiff's physical safety was unreasonably endangered. *See id*. The "special circumstances" theory applies "where there is 'an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious.' . . . Examples include a hospital negligently informing an individual that her parent had died . . .; a negligent misdiagnosis of HIV . . .; and the mishandling of a loved one's remains." *Id*. at *16 (citations omitted).

With respect to the first element, Shukla points to teasing and jokes made to him by colleagues, such as being told that his next assignment would be in North Korea or Syria (SAC ¶ 24), being "mocked" for not receiving a bonus (SAC ¶ 25) and being told that he would be removed from a project. (*Id*.) Plaintiff also complains about being released from multiple projects and alleged comments about his heritage made by senior managers. (*Id*. ¶¶ 36, 64 84, 85.) However, "the reduction of work responsibilities and exclusion from meetings and work-related activities do not amount to conduct that would unreasonably endanger one's physical safety or

cause one to fear for her safety, as required for an NIED claim." *Starr v. Time Warner*, *Inc.*, No. 07-CV-05871 (DC), 2007 WL 4144627, at *6 (S.D.N.Y. Nov. 21, 2007) (citing *Perry v. Valley Cottage Animal Hosp.*, 261 A.D.2d 522, 522-23 (2d Dep't 1999)). Neither are the jokes or other comments sufficient, even if related to Plaintiff's national origin. *See Rivera v. Baccarat, Inc.*, No. 95-CV-09478 (MBM), 1996 WL 251850, at *3 (S.D.N.Y. May 10, 1996) (Plaintiff "complains of a partial prohibition of her speaking Spanish in the workplace, of being ridiculed for her accent, and of being subjected to ethnic stereotyping. While such conduct is not condoned, it is also not actionable under the rubric of intentional infliction of emotional distress."); *Williams v. Port Auth. of New York & New Jersey*, 880 F. Supp. 980, 995 (E.D.N.Y. 1995) (racial slurs made by supervisor insufficient to establish IIED claim). Plaintiff's allegations that he was threatened with termination (SAC ¶¶ 32, 35) also fail to meet the requisite threshold of NIED or IIED. *Stella Stylianou v. St. Luke's/Roosevelt Hosp. Ctr.*, 902 F. Supp. 54, 59 (S.D.N.Y. 1995) ("Threats of termination do not rise to the level of extreme and outrageous behavior.").

In any event, "[t]he discharge of an employee . . . does not give rise to a claim for negligent infliction of emotional distress because a corporation owes the same duties to all employees." *Starr*, 2007 WL 4144627, at *6 (citing *Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 235 (S.D.N.Y. 1989)). The same hold true for IIED claims. *See Cruz v. HSBC Bank, USA, N.A.*, 5 F. Supp. 3d 253, 261 (E.D.N.Y.), *aff'd*, 586 F. App'x 723 (2d Cir. 2014) ("[C]laims for the intentional infliction of emotional distress are particularly difficult in employment cases, where the plaintiff may attempt to recast his claim for wrongful discharge.").

Plaintiff also appears to base his IIED and NIED claims on allegedly false sexual harassment allegations made against him. (*See* SAC ¶ 202.) However, even "false accusations of criminal

conduct, or conduct that society deems reprehensible, do not inherently establish IIED." *Truman*, 2020 WL 353615, at *13 (citing, *inter alia*, *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 374-75 (S.D.N.Y. 2016) (dismissing IIED claim against university for its treatment of plaintiff accused of rape, explaining that "even a false charge of sexual harassment does not rise to the level of outrage required" (citation omitted)).

For these reasons, Plaintiff's IIED and NIED claims are dismissed.

### B.     Negligent Hiring, Training And Supervision

To state a cause of action for negligent hiring, training or supervision under New York law, a plaintiff must show, in addition to the standard elements of negligence: (1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises. *See Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 539 (S.D.N.Y. 1015), *on reconsideration in part*, 133 F. Supp. 3d 563 (S.D.N.Y. 2015) (citations omitted). "When an employee acts negligently within the scope of his or her employment, liability may attach to the employer under a vicarious liability theory . . .. Conversely, liability for negligent hiring, retention, training or supervision typically arises only when an employee acts outside of the scope of his employment and vicarious liability cannot obtain." *Marotta v. Palm Mgmt. Corp.*, No. 05-CV-10688 (LTS) (HBP), 2009 WL 497568, at *4 (S.D.N.Y. Feb. 25, 2009).

Shukla alleges that Deloitte "facilitated the discrimination and retaliation suffered by the plaintiff by the negligent hiring, supervision, and training of its employees." (SAC ¶ 212.) Liability for negligent hiring does not exist here since the alleged acts of Defendant's employees occurred

within the scope of their employment and liability already may attach to Deloitte for such acts under a vicarious liability. *See Marotta*, 2009 WL 497568, at *4 ("Plaintiff has not sufficiently pleaded a cause of action against Defendant for negligent hiring, retention, training, or supervision, because Plaintiff has not pleaded that the actions (or negligent omissions) giving rise to the claim occurred outside the scope of the employees' duties as such.").

Plaintiff's SAC does not allege that Defendant knew or should have known of the employees' propensity for the conduct that caused Plaintiff's purported injuries. *See Tchatat v. City of New York*, No. 14-CV-02385 (LGS), 2015 WL 6159320, at *3 (S.D.N.Y. Oct. 20, 2015) ("Assuming that the Best Buy and Eastern employees' acts were outside the scope of their employment, the Complaint fails to allege how Best Buy or Eastern knew or should have known these employees had a propensity to commit the acts at issue in this case."). Thus, Plaintiff's negligent hiring, training and supervision claims are dismissed.

## VII.   **Plaintiff's Remaining Claims**

Plaintiff's remaining claims allege various violations of the NYSHRL, the NYCHRL and the common law, in addition to multiple federal criminal statutes, including 18 U.S.C. § 242 (SAC ¶ 224); 18 U.S.C. § 1341 (*id.* ¶ 227); 18 U.S.C. §§ 1512 and 1513 (*id.* ¶¶ 220-21); 18 U.S.C. § 1589 (*id.* ¶ 214); and 18 U.S.C. §§ 1952 and 1953 (*see* heading for Count Eighteen).[19] To the extent that Plaintiff is alleging in these Counts violations of the NYSHRL and the NYCHRL, the Court dismisses

---

[19] Count Seventeen is entitled "Conspiracy To Commit Crimes Involving Bodily Injury." (*See* SAC, p. 49.) In this Count, Plaintiff alleges violations of the Federal Tort Claims Act. (*Id.* ¶ 217.) The Federal Tort Claims Act has no application here since that Act only involves claims against the United States as defendant. *See* 28 U.S.C.A. § 1346. In addition, there is no cause of action for conspiracy under the New York common law. *See Decter v. Second Nature Therapeutic Program, LLC*, 42 F. Supp. 3d 450, 463 (E.D.N.Y. 2014) ("civil conspiracy cannot be alleged as a separate claim because New York law does not recognize civil conspiracy as an independent tort").

these claims as redundant of Plaintiff's earlier Counts alleging violations of these statutes. *See*

Fed. R. Civ. P. 12(f). As discussed below, Plaintiff has not stated a cognizable claim under any of

the federal criminal statutes.

"Violations of the Criminal Code do not provide a basis for a civil cause of action, unless

the particular provision in question includes an express or implied private right of action."

*Weinstein v. City of New York*, No. 13-CV-06301 (LGS), 2014 WL 1378129, at *4 (S.D.N.Y. Apr. 8,

2014), *aff'd*, 622 F. App'x 45 (2d Cir. 2015). Shukla alleges that Defendant violated 18 U.S.C. §

242, 18 U.S.C. § 1341, 18 U.S.C. §§ 1512 and 1513, 18 U.S.C. § 1589 and 18 U.S.C. §§ 1952 and

1953. (SAC ¶¶ 214, 220-21, 224, 227.)

Most of the federal criminal statutes alleged by Plaintiff do not create a private right of

action. *See Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) (no private right of action under 18

U.S.C. §§ 242, 1341); *Roberts v. Choate Const. Co.*, No. 11-CV-00120 (TJC), 2011 WL 5006469, at

*2 (M.D. Fla. Oct. 20, 2011) (no private right of action under 18 U.S.C. § 1512); *Shallow v. Fed.*

*Bureau of Investigation*, No. 19-CV-00229 (CMH), 2019 WL 2718493, at *2 (E.D. Va. June 27,

2019), *aff'd*, 788 F. App'x 189 (4th Cir. 2019) ("Courts have consistently held that 18 U.S.C. §§

241, 242 and 18 U.S.C. § 1513 are criminal statutes that do not create a private right of action.");

*Schwartz v. F.S. & O. Assocs., Inc.*, No. 90-CV-01606, 1991 WL 208056, at *2 (S.D.N.Y. Sept. 27,

1991) (no private right of action under 18 U.S.C. § 1952).[20]

---

[20] 18 U.S.C. § 1953 is listed by Plaintiff in his heading for Count Eighteen, but the SAC reflects no alleged violations of that statute. That statute involves the interstate transportation of wagering paraphernalia and has no plausible application here.

A private right of action does exist under 18 U.S.C. § 1589, the Trafficking Victims Protection Reauthorization Act ("TVPRA"), but has no possible application to this case. The TVPRA creates a

> private right of action for victims of trafficking, and provides for civil liability of any person who obtains the labor or services of a person:
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

*Saiyed v. Archon, Inc.*, No. 14-CV-06862 (JS) (ARL), 2016 WL 11481200, at *5 (E.D.N.Y. Jan. 20, 2016), *report and recommendation adopted*, 2016 WL 868211 (E.D.N.Y. Mar. 7, 2016) (quoting 18 U.S.C. § 1589(a)).

Shukla alleges that Deloitte "prevented [him] from engaging in employment outside of [Deloitte's] direct or indirect illegal control." (SAC ¶ 214.) This claim presumably is based on Plaintiff's belief that Defendant communicated with the companies where Plaintiff interviewed and caused them not to hire Plaintiff. (*See* SAC ¶¶ 94, 96, 101-04.) Assuming these allegations to be true, no claim has been stated under TVPRA. The statute makes it illegal to "knowingly provide[ ] or obtain[ ] the labor or services of a person" through unlawful means. *See* 18 U.S.C. § 1589(a). But here, Plaintiff does not allege that his labor or services for Deloitte were procured through illegal means. His claims involve purported illegal acts during his employment.

## VIII.   **Leave To Amend**

"There is a strong preference for allowing plaintiffs to amend inadequate pleadings." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, No. 08-MDL-01963 (RWS), 2011

WL 4357166, at *2 (S.D.N.Y. Sept. 13, 2011). This is particularly true if the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of his pleading. *See Loreley Fin. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Moreover, a *pro se* complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (citation omitted). Only in circumstances where any amendment to a claim would be futile may a claim be dismissed with prejudice and without leave to amend. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).")

Based on the foregoing, the Court grants Plaintiff leave to amend, except with respect to his claims under the federal criminal statutes addressed in Section VII above. The Court finds that any amendment of those claims would be futile.

**CONCLUSION**

For the foregoing reasons, it is hereby ORDERED, as follows:

1. Plaintiff's Motion to Amend is GRANTED and the Second Amended Complaint (ECF No. 39-2) is deemed to be the operative pleading;

2. Defendant's partial motion to dismiss is GRANTED, except with respect to Plaintiff's race and national origin claims under the NYCHRL, and the motion is DENIED as to those claims; and

3. The foregoing dismissals are without prejudice, except with respect to the claims arising under the federal criminal statutes.

4. No later than July 6, 2020, Plaintiff may file an amended pleading in accordance with this Opinion and Order.

**SO ORDERED.**

DATED:      New York, New York
            June 15, 2020

            _____
            STEWART D. AARON
            United States Magistrate Judge