USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/17/2020

**Ashu Shukla**
*Plaintiff*
202 Salem CT, Apt#11
Princeton, NJ 08540
ashu.shukla@gmail.com
T # 917-488-6143

**Date: 09/16/2020**

**VIA USDC ECF**

To,

**HON. Judge Stewart D. Aaron,**
U.S. District Court, Southern District of New York,
500 Pearl Street,
New York, New York 10007

Re:   **Shukla vs. Deloitte Consulting LLP**
        Index No.: 1:19-cv-10578-AJN-SDA

  **Re: Question on legal remedies available to the plaintiff if the court denies any of plaintiff's legitimate claims**

Hon. Judge Stewart Aaron,

    As you may know, I am the plaintiff on the Shukla vs. Deloitte case at SDNY case# 1:19-cv-10598-AJN. Plaintiff is a law abiding individual and has a very high regard for government, laws and institutions that safeguard society. Plaintiff is specially fascinated with the rich history of the Southern District of New York (SDNY) Federal Court, and has a high regard for the Judges, Court staff and personnel.

    For the past several months, defendant has continued their scheme to maintain an illegal control over the plaintiff. Defendant's use of biochemical / medical manipulation devices against the plaintiff[1], is an example of such misconduct.

---

[1] In future, Plaintiff intends to file a motion for temporary restraining order / preliminary injunction for defendant's illegal use of biochemical / medical devices on the plaintiff.

The Honorable Stewart D. Aaron, U.S.D.J.
September 16th 2020

Based on the recent filings by the plaintiff and the immediate Judgements entered by the court, plaintiff is concerned that defendant may consider judgements entered by the court as a favorable signal to further their malicious scheme of maintaining an illegal control over plaintiff and support their business cycle. Since the court has denied plaintiff's previous requests, and since plaintiff is at the mercy of this court in future, plaintiff intends to further analyze issues at hand by an example.

**Plaintiff's Hostile Work Environment Claim Based on Race**:

On June 15th 2020, the court granted plaintiff a right to file an amended complaint. The court identified various technical discrepancies in plaintiff's complaint, which plaintiff intends to correct on his amended complaint. One such technical discrepancy identified by the court was plaintiff's hostile work environment claim based on race. Within two weeks of court's order, on 06/29/2020, plaintiff notified the court of the disproportionately heavy workload assigned to him (*doc# 49-2, Page# 5*) with racial animus. Plaintiff was given the workload of '**two fulltime employees**' on a project where plaintiff had no industry experience and no formal training. As a matter of fact, in February 2018, more than 2.5 years ago, plaintiff submitted a written notification about this issue to HR (*ref. doc# 49-3, Page# 39 - 41*), however, the regulatory body within Deloitte – Talent Relations – led by Jonna Rohde - retaliated against the plaintiff by (a) issuing a malicious letter of reprimand, (b) not interviewing the witnesses identified by the plaintiff, (c) inaccurately paraphrasing plaintiff's account of events, (d) inaccurately claiming that plaintiff wants to rescind this complaint etc.

As you may know, at the pleading stage, plaintiff is not required to "demonstrate" or "establish" discrimination; he is required only to plead a claim upon which relief could be granted. See, e.g., *Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir.2007)*. Previously, the Second Circuit has held that the assignment of "a disproportionately heavy workload" can constitute an adverse employment action. *Feingold, 366 F.3d at 152–53*. Also, *Vega v. Hempstead 801 F. 3d 72 (2nd Cir 2015)*

The Honorable Stewart D. Aaron, U.S.D.J.
September 16th 2020

Here, in addition to the disproportionately heavy workload, plaintiff in his third amended complaint alleges that (a) he was threatened with termination and deportation, (b) he was deliberately released from projects and was intentionally given a poor performance rating, (c) he was intentionally made to wait for weeks to start a new assignment based on his visa limitation.

Further, plaintiff alleges that his white supervisors and colleagues (a) released him from projects and sent him on projects where he was destined not to be hired, (b) accused the plaintiff of buying an airplane ticket without approval, (c) accused the plaintiff with impermissible bias of inadvertently touching the behind of a 62-year old woman, (d) treated the female accuser more favorably than the plaintiff, (e) replaced the plaintiff with a white employee more than once, and (f) sabotaged plaintiff's personnel file. Plaintiff was subjected to different standards of workplace environment while his white supervisors and colleagues were not.

In addition, plaintiff also alleges that he was subjected to a constant drumbeat of ridicule, (a) that his white supervisors and colleagues made racially insensitive remarks - plaintiff was called "deplorable" and "expendable Indian" - while his white colleagues were not, (b) that his white colleagues received favorable performance evaluations while plaintiff did not, (c) that his white colleagues were not restricted on seeking new client projects while several of plaintiff's applications were rejected with reason 'Project Closed Not Selected', (d) that his white colleagues were not subjected to recruitment fraud and technically not forced to leave the country while the plaintiff was, (e) that similarly situated employees did not have to go through the ordeal of getting released multiple times from multiple projects while the plaintiff was.

Plaintiff further alleges that the above mentioned racially insensitive actions, including comments by his colleagues, distressed him emotionally. The sequence and timing of these events, close to plaintiff's adverse employment action, such as his termination, combined with their threats, humiliations and circumstances were sufficient to create a workplace atmosphere that was permeated with discriminatory intimidation; and steadily intensifying drumbeats of insult and ridicule were sufficiently severe or pervasive to alter the conditions of plaintiff's work environment and employment with the defendant.

The Honorable Stewart D. Aaron, U.S.D.J.
September 16th 2020

Earlier, Federal Courts in New York have established that "[A]llegations of a heavier workload alone can support a viable hostile work environment claim" if the "plaintiff was subjected to 'disproportionately burdensome work assignments.' " *Wilson v. Family Dollar Stores of New York, Inc., No. CIV A CV-06-639 (DGT), 2008 WL 4426957, at \*8 (E.D.N.Y. Sept. 25, 2008) (quoting Garone v. UPS, 436 F. Supp. 2d 448, 467 (E.D.N.Y. 2006)), aff'd, 374 F. App'x 156 (2d Cir. 2010); see also Raniola v. Bratton, 243 F.3d 610, 621 (2d Cir. 2001).* A reasonable employee could find that the assignment of a disproportionate workload altered her employment conditions "for the worse." *Patane, 508 F.3d at 113.*

As a comparative case, at the same Court, SDNY, during similar time frame, [*Ref. Sanderson v. Leg Apparel et al, 2020 WL 3100256 (SDNY June 11, 2020)*], the court held that while "[s]tanding alone, these allegations might fail to plead that a plaintiff was subjected to an objectively hostile work environment" but that "together with the allegations that he was assigned a disproportionately heavy workload, Sanderson has pleaded that he faced an objectively hostile work environment." Finally, the court determined that plaintiff plausibly alleged that he subjectively perceived his environment as hostile noting that plaintiff's amended complaint "teems with allegations that his colleagues' racially insensitive actions distressed him emotionally." Thus, plaintiff's claims on this matter are comparable to recent court judgements.

However, since this court has previously entered favorable decisions for the defendant, the plaintiff is worried that this court may potentially again overlook facts in plaintiff's amended complaint [2], and wrongfully deny plaintiff's hostile work environment case based on his race.

---

[2] This possibility may arise due to two reasons (a) Joanna Rohde, prime accused on the case, and her talent relations department, which concealed information and wrongfully investigated plaintiff's matters, may further use their privilege to interfere with court's independent decision making, and (b) the defendant's ability to access the legal system such as to restrict employee access to courts.

The Honorable Stewart D. Aaron, U.S.D.J.
September 16th 2020

    Since the plaintiff has previously tried to establish that this court has (a) overlooked facts in plaintiff's second amended complaint (SAC), (b) inserted facts that were not stated in SAC, (c) presented judgements on issues that were not identified by the defendant on their motion to dismiss, (d) ignored plaintiff request for the involvement of SDNY District Attorney, plaintiff intends to directly write to the court to identify that there is no middle ground on such issues; and if the plaintiff meets the minimal plausible pleading standards as directed by the Second Circuit in Littlejohn v. City of New York (2nd Cir. 2015), this court must enter a judgement in favor of the plaintiff.

    Furthermore, given the above issues, plaintiff denied consent to this court in adjudicating defendant's motion to dismiss plaintiff's third amended complaint. However, this court has cleverly reassigned this motion back on to itself, and now the plaintiff is worried that this court might take an offense for plaintiff's raising such issues.

    Plaintiff currently has knowledge that interlocutory appeals to a higher court (appeals court) are not allowed in such circumstances, and the plaintiff could be knowingly made to wait for another two or more years before he could appeal, however, the plaintiff would like to directly ask this court to *provide the plaintiff with a list of legal remedies available to the plaintiff* if the court again denies plaintiff's legitimate claims such as the hostile work environment claim stated above.

ENDORSMENT: The Court cannot provide Plaintiff with legal advice. Plaintiff once again is encouraged to consult with the NYLAG Pro Se Clinic. SO ORDERED.
Dated: 9/17/2020

*Sincerely,*
Ashu Shukla
Plaintiff
09/16/2020

*(cc) Defendant Attorneys via ECF & Mail*